RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0328P (6th Cir.)
File Name: 00a0328p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

WILLIAM M. SONNY
LANDHAM,
     *Plaintiff-Appellant,*

   *v.*

LEWIS GALOOB TOYS, INC.;
TWENTIETH CENTURY FOX
FILM CORPORATION,
     *Defendants-Appellees.*

No. 99-5959

Appeal from the United States District Court
for the Eastern District of Kentucky at Ashland.
No. 97-00261—Henry R. Wilhoit, Jr., Chief District Judge.

Argued: August 11, 2000

Decided and Filed: September 18, 2000

Before: NELSON, SILER, and BATCHELDER, Circuit
Judges.

———————————

## COUNSEL

**ARGUED:** Jack Allen Wheat, STITES & HARBISON,
Louisville, Kentucky, for Appellant. Richard E. Vimont,
VIMONT & WILLS, Lexington, Kentucky, for Appellees.

1

**ON BRIEF:** Jack Allen Wheat, Joel T. Beres, STITES & HARBISON, Louisville, Kentucky, Thomas M. Bertram, II, STANLEY & BERTRAM, Vanceburg, Kentucky, Stephen G. Wagner, WAGNER & MAYER, Louisville, Kentucky, for Appellant.  Richard E. Vimont, Bernard F. Lovely, Jr., Christopher M. Parenti, VIMONT & WILLS, Lexington, Kentucky, for Appellees.

————————

## OPINION

————————

ALICE M. BATCHELDER, Circuit Judge.    William "Sonny" Landham claims that Defendants-Appellees Galoob Toys, Inc. (f/k/a/ Lewis Galoob Toys, Inc.) ("Galoob") and Twentieth Century Fox Film Corp. ("Fox") violated his Kentucky-law "right of publicity" and federal Lanham Act rights by marketing without his permission an action figure of the character he played in the movie *Predator*.  The district court entered summary judgment in favor of Galoob and Fox, and Landham timely appealed.  Because we conclude that Landham has neither demonstrated that he has a public identity sufficient to support a claim of infringement of his right of publicity nor established a claim under the Lanham Act, we affirm.

### I. Background

Landham is a fringe actor who has played supporting roles in several motion pictures, including *48 Hours*, *Action Jackson*, and *Maximum Force*, as well as several unrated, pornographic films.  This suit concerns the role of "Billy, the Native American Tracker" that Landham portrayed in Fox's 1987 action film *Predator*.  Landham's employment was initially memorialized in a March 3, 1986, "Standard Cast Deal Memo" ("Memo"), which detailed only the salary, starting date, and an agreement that Landham would pay for a bodyguard for himself.  Fox later delivered a "Deal Player Employment Agreement" ("Agreement") which, among other

things, assigned all merchandising rights for the Billy character to Fox. The Agreement was never signed, however, and there is a dispute between the parties as to how long after Landham left for filming in Mexico the Agreement was received by his agent in the United States. Landham testified that the only contractual understanding he had with Fox was that he would act in the movie for a specified amount of money and that he would be required to pay for the bodyguard. In 1995, Fox licensed to Galoob the rights to produce and market a line of its "Micro Machines" toys based on *Predator*. One of these three sets of toys contained a "Billy" action figure. Because the toy is only 1.5 inches tall and has no eyes or mouth, it bears no personal resemblance to Landham. Moreover, Eric Shank, the Galoob employee who designed the toy, purposefully avoided any such resemblance. Nonetheless, Landham argues that the toy violates his right of publicity under Kentucky law and amounts to a false endorsement under the Lanham Act. The district court disagreed, finding insufficient evidence to suggest that consumers would associate the toy with Landham.

## II.  Analysis

### A.  Standard of Review

We review a district court's grant of summary judgment de novo. *See Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 409 (6th Cir. 1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). To prevail, the non-movant must show sufficient

evidence to create a genuine issue of material fact. *See Klepper v. First Am. Bank*, 916 F.2d 337, 341-42 (6th Cir.1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

### B. The Right of Publicity

The right of publicity is a creature of state common law and statute and originated as part of the common-law right of privacy. The Supreme Court has recognized its consistency with federal intellectual property laws and the First Amendment, *see generally Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562 (1977), and Kentucky has long recognized the right of privacy, now embodied in the Restatement (Second) of Torts, § 652A, from which the publicity right emanates. *See McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981) (citing *Foster-Milburn Co. v. Chinn*, 120 S.W. 364 (Ky. 1909)). Additionally, the Kentucky Legislature has recognized "that a person has property rights in his name and likeness which are entitled to protection from commercial exploitation," and has codified the "the right of publicity, which is a right of protection from appropriation of some element of an individual's personality for commercial exploitation." Ky. Rev. Stat. § 391.170(1). As case law on this right is exceedingly rare, both in Kentucky and nationwide, and because of the general constitutional policy of maintaining uniformity in intellectual property laws, *see Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989), courts typically give attention to the entire available body of case law when deciding right of publicity cases. *See, e.g., Cheatham v. Paisano Publications, Inc.*, 891 F. Supp. 381,

not mandate reversal, however, unless we disagree with the court's ultimate holding on likelihood of confusion.

Our findings on the right of publicity issue dictate the outcome of this claim as well. Noting that Landham had offered no evidence with regard to his name recognition among children, the district court correctly held that there was no genuine issue of fact material to the strength of Landham's mark, and that given "the general adult nature of [Landham's] past work, it does not appear that his mark possessed any significant degree of strength among that part of society relevant to this action"—the toy-buying public. Likewise, the factors accounting for the similarity of the marks, Defendants' intent, and expansion of the product lines weigh against Landham. The court correctly found that three factors—relatedness, marketing channels, and degree of purchaser care—weighed in Landham's favor. Our resolution of this claim, however, is not determined by numerical calculations or the weighted values of particular "factors." These are simply objective aids for reaching a subjective conclusion as to whether the consuming public is likely to be genuinely confused about whether Landham endorsed Galoob's "Billy" toy. For the same reasons that we found that Landham had not demonstrated the infringement of any right of publicity, we hold that he has not established a claim under the Lanham Act.

### III.  Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

*see Waits*, 978 F.2d at 1110, and the "mark" at issue is the plaintiff's identity. *See White*, 971 F.2d at 1399-1400. The underlying question to be answered is whether the plaintiff has shown "that the public believe[s] that 'the mark's owner sponsored or otherwise approved of the use of the trademark.'" *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir. 1988) (quoting *Carson*, 698 F.2d at 834).

We use the following eight-factor test for determining likelihood of confusion:

1. strength of plaintiff's mark;
2. relatedness of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. likely degree of purchaser care;
7. defendant's intent in selecting the mark;
8. likelihood of expansion of the product lines.

*Id.* These are simply guidelines to aid our analysis. "They imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Id.*

Initially, Landham urges that the district court erred as a matter of law by following the Ninth Circuit's requirement that most of the eight factors weigh in his favor before a plaintiff may succeed on his Lanham Act claim. *See Wendt*, 125 F.3d at 812. Landham is correct that the Ninth Circuit's rule on this point is more demanding than our holding that "a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil*, 839 F.2d at 1186. The district court also erred in opining that evidence of actual confusion is "perhaps the most important factor," as we have previously observed that there will rarely be direct evidence on this point, and it is usually significant only when the evidence shows an abatement of previous confusion. *See id.* at 1188. These discrepancies do

385 (W.D. Ky. 1995) (looking to federal law because Kentucky has not articulated the right's specific elements).

### C. Copyright Preemption

Before addressing the substance of Landham's claim, we must address Galoob's jurisdictional objection that Landham's claim is preempted by the federal Copyright Act merely because the claim involves a copyrighted work—in this case, *Predator*. If this were true, however, state-law rights of publicity would virtually cease to exist. Section 301 of the Copyright Act provides the extent of the Act's express preemptive force:

> (a) [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether [...] published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.
> (b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—
> (1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression; or [...]
> (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

17 U.S.C. § 301. State laws may also be impliedly preempted by the Copyright Act if they create rights that could be violated by the exercise of one of the five "exclusive [federal] rights" granted to copyright owners—reproduction,

derivation, distribution, public performance, and public display, *see* 17 U.S.C. § 106—or if they otherwise undermine the Copyright Act's fundamental purpose of providing a uniform system for protecting original expression for the benefit of society at large. *See Bonito Boats*, 489 U.S. at 165-66; *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 478-79 (1974).

Landham's claim is not preempted by the Copyright Act. The Supreme Court has recognized that rights of publicity are generally consistent with the Copyright Act. *See Zacchini*, 433 U.S. at 577; *see also Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1099-1100 (9th Cir. 1992) (citing *Bonito Boats* and *Zacchini*). As long as a plaintiff states a claim of invasion of personal, state-law rights that are distinct from copyright protections, the claim will not be preempted. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 810 (9th Cir. 1997). Unlike the baseball player-plaintiffs in *Baltimore Orioles, Inc. v. Major League Baseball Players Assoc.*, 805 F.2d 663 (7th Cir. 1986), Landham is not claiming the right of publicity in order to gain rights in the telecast of his performance, or to contest Fox's right to create derivative works from its copyrighted work in general. Rather, he claims that the toy evokes his personal identity—an inchoate "idea" which is not amenable to copyright protection—to his emotional and financial detriment. Regardless of the merits of this claim, it does assert a right separate from those protected by the Copyright Act. *See Wendt*, 125 F.3d at 809 (claim that animatronic robots "look like" plaintiff and thereby evoke his identity in violation of his right of publicity is not preempted); *cf. Midler v. Ford Motor Co.*, 849 F.2d 460, 462 (9th Cir. 1988) (distinctive sound of celebrity's voice is not protected by copyright).

### D.  *Contractual Assignment of Publicity Right*

Fox argues that although Landham never signed the Agreement, its terms regarding merchandising should be enforced against him. Fox correctly argues that parties may

a movie or TV show without evoking the identities of its actors to some extent. *See generally id*. The Tenth Circuit has specifically adopted the reasoning of Judge Kozinski's dissent. *See Cardtoons v. Major League Baseball Players Assoc.*, 95 F.3d 959, 970 (10th Cir. 1996).

We decline Landham's invitation to extend *White* to this case. First, the holding is factually distinguishable, as White used her own name in her television role, and also produced evidence that her identity was invoked and had commercial value. More importantly, we share, as we think the Kentucky courts would, Judge Kozinski's unwillingness to give every individual who appears before a television or movie camera, by occupation or happenstance, the right as a matter of law to compensation for every subtle nuance that may be taken by someone as invoking his identity without first being required to prove significant commercial value and identifiability. Such a holding would upset the careful balance that courts have gradually constructed between the right of publicity and the First Amendment and federal intellectual property laws, undermining the right's viability. We therefore decline to give Landham "an exclusive right not in what [he] looks like or who [he] is, but in what [he] does for a living." *White*, 989 F.2d at 1515. To the extent that *White* may be read to require a contrary result, we reject its reasoning.

In sum, Landham has not demonstrated—either through direct evidence or by virtue of Galoob's use of the "Billy" character—that his persona has "significant commercial value" or that the "Billy" toy invokes his own persona, as distinct from that of the fictional character. For these reasons, we affirm the district court's grant of summary judgment to Defendants on this claim.

### G.  *Landham's Claim Under the Federal Lanham Act*

A false designation of origin claim brought by an entertainer under § 43(a) of the Lanham Act in a case such as this is equivalent to a false association or endorsement claim,

One case that may be read to depart significantly from this rule, and one upon which Landham heavily relies, is *White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. 1992). There, an advertiser humorously evoked a futuristic version of the game show *Wheel of Fortune* through an animatronic replica of its hostess, Vanna White. The robot bore no facial resemblance to White, but it was adorned with a blond wig, jewelry and clothing similar to White's typical ensemble, and in her familiar pose turning the game board's letters. Although none of these factors individually suggested White, the court found that, taken together, they clearly evoked her identity. *See id*. at 1399. The dissenting judge argued that the majority had confused White, the person, with her TV role, and that the only element of the commercial that was unique to her was the *Wheel of Fortune* set, which was not part of her personal identity. *See id*. at 1404-05 (Alarcon, J., dissenting). Three other judges on the circuit agreed:

Consider how sweeping this new right is. What is it about the ad that makes people think of White? It's not the robot's wig, clothes or jewelry; there must be ten million blond women (many of them quasi-famous) who wear dresses and jewelry like White's. It's that the robot is posed near the "Wheel of Fortune" game board. Remove the game board from the ad, and no one would think of Vanna White. . . . But once you include the game board, anybody standing beside it—a brunette woman, a man wearing women's clothes, a monkey in a wig and gown—would evoke White's image, precisely the way the robot did. It's the "Wheel of Fortune" set, not the robot's face or dress or jewelry that evokes White's image. The panel is giving White an exclusive right not in what she looks like or who she is, but in what she does for a living.

*White v. Samsung Elecs. Am., Inc.*, 989 F.2d 1512, 1515 (9th Cir. 1993) (Kozinski, J., dissenting from denial of rehearing en banc). The judges warned of the dangers of overextending intellectual property laws, noting that it is impossible to evoke

be bound by the terms of an unsigned contract when their actions demonstrate assent to the agreement. *See Cowden Mfg. Co., Inc. v. Systems Equip. Lessors, Inc.*, 608 S.W.2d 58, 61 (Ky. Ct. App. 1980). But Fox points only to Landham's presence on the set and hiring of the bodyguard as evidence of his assent to the Agreement. Those terms were included in the Memo, however, and therefore are not evidence of assent to the Agreement. Without such evidence, we cannot enforce the unsigned Agreement against Landham.

### E.  Commercial Value of Landham's Identity

The right of publicity is designed to reserve to a celebrity the personal right to exploit the commercial value of his own identity.[1] *See Carson v. Here's Johnny Portable Toilets, Inc.*, 698 F.2d 831, 835 (6th Cir. 1983) (noting that the right was meant to protect famous celebrities); *McFarland v. Miller*, 14 F.3d 912, 919 (3d Cir. 1994) (describing the heart of the right as the value of an association with the plaintiff's image). Landham correctly argues that he need not be a national celebrity to prevail. But in order to assert the right of publicity, a plaintiff must demonstrate that there is value in associating an item of commerce with his identity. *See Cheatham*, 891 F. Supp. at 386 (noting that plaintiffs do not need national celebrity but must show "significant 'commercial value'"); *Wendt*, 125 F.3d at 811; *McFarland*, 14 F.3d at 920 (noting that the right is worthless without an association); *Lugosi v. Universal Pictures*, 603 P.2d 425, 431 (Cal. 1979) (per curiam) (same). The defendant's act of misappropriating the plaintiff's identity, however, may be sufficient evidence of commercial value. *See McFarland*, 14 F.3d at 919, 921.

---

[1] Although this is usually done by endorsing a product or service, the "right of publicity isn't aimed at or limited to false endorsements; that's what the Lanham Act is for." *White v. Samsung Elecs. Am., Inc.*, 989 F.2d 1512, 1515 n.17 (9th Cir. 1993) (Kozinski, J., dissenting from denial of rehearing en banc) (citations omitted).

To succeed, then, Landham must show that a merchant would gain significant commercial value by associating an article of commerce with him. He presented no such evidence to the district court. Landham argues vigorously on appeal that Galoob's use of Landham's identity is itself sufficient evidence of commercial value. But this argument assumes that by identifying its toy as "Billy," Galoob has evoked Landham's identity in the public mind.

### F. Relationship Between the "Billy" Toy and Landham's Personal Identity

Although the right began as a protection for a celebrity's "name and likeness," *i.e.*, physical features, it is now generally understood to cover anything that suggests the plaintiff's personal identity. *See* Ky. Rev. Stat. § 391.170(1) ("the right of publicity . . . is a right of protection from appropriation of *some element of an individual's personality*") (emphasis added)*; Carson*, 698 F.2d at 835 ("If the celebrity's identity is commercially exploited, there has been an invasion of his right whether or not his 'name or likeness' is used. Carson's identity may be exploited even if his name . . . or his picture is not used."); *see also Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 413-15 (9th Cir. 1996) (noting that to articulate exhaustively the protected ways in which one's identity may be exploited is to invite clever marketers to discover new ways); *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974) (holding that slightly altered picture of well-known driver's race car was distinctive enough to suggest the plaintiff's identity, although the driver could not be seen); *Ali v. Playgirl, Inc.*, 447 F.Supp. 723, 727 (S.D.N.Y. 1978) (finding drawing of a nude, black boxer identified as "The Greatest" evocative of Muhammad Ali's identity, even though the face was not clearly his and the figure was labeled "Mystery Man"); *Hirsch v. S.C. Johnson & Son, Inc.*, 280 N.W.2d 129, 137 (Wisc. 1979) (finding use of the name "Crazylegs" for female shaving gel violated the right of publicity of a professional football player known by that appellation).

What is not as clear, however, is the point at which the identity of a fictional character becomes so synonymous with the identity of the actor playing the role that the actor may challenge the character's exploitation. If the use of a fictional character also evokes the identity of the actor who played that character, he may challenge that use regardless of the fact that the actor's personal notoriety was gained exclusively through playing that role. *See Wendt*, 125 F.3d at 811 (reversing summary judgment against two actors from the TV series *Cheers* who challenged the use of animatronic bar patrons modeled after their characters in *Cheers*-themed airport bars); *McFarland*, 14 F.3d at 920 (reversing summary judgment against George McFarland, who played "Spanky" in *Our Gang*, in suit against owner of the restaurant "Spanky McFarland's"). Courts have generally been careful, however, to draw the line between the character's identity and the actor's, siding with plaintiffs only when it is shown that the two personalities are inseparable in the public's mind. *See Lugosi*, 603 P.2d at 432 (Mosk, J., concurring) (explaining that actors have no inherent right in their roles, although those who play themselves or characters of their own creation may); *McFarland*, 14 F.3d at 920 (adopting J. Mosk's *Lugosi* concurrence and holding that "[w]here an actor's screen persona becomes so associated with him that it becomes inseparable from the actor's own public image, the actor obtains an interest in the image"); *Wendt*, 125 F.3d at 811 (describing the issue as whether the robots physically "look like" plaintiffs, since plaintiffs had conceded that they had no rights in the *Cheers* characters themselves); *Motschenbacher*, 498 F.2d at 827 (asking whether race car led viewers to believe that the plaintiff was in the ad, not simply that it reminded them of him). These cases, which appear to be accepted by the majority—if not all—of the courts to address the issue, make clear that although exploitation of a fictional character may, in some circumstances, be a means of evoking the actor's identity as well, the focus of any right of publicity analysis must always be on the actor's own persona and not the character's.