Judith SEIFER, R.N., Ph.D., Plaintiff,

v.

PHE, INC., et al., Defendants.

No. C–3–01–70.

United States District Court,
S.D. Ohio,
Western Division.

March 19, 2002.

Henry Louis Sirkin, Marc David Mezibov, Christian A. Jenkins, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, for plaintiff.

Hal Roger Arenstein, Cincinnati, OH, Thomas K. Maher, Chapel Hill, NC, David S. Rudolf, Rudolf Maher Widenhouse & Fialko, Chapel Hill, NC, for defendants.

DECISION AND ENTRY OVERRULING, AS MOOT, DEFENDANTS' MOTION TO DISMISS (DOC. # 12); DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (DOC. # 22) SUSTAINED IN PART AND OVERRULED IN PART

RICE, Chief Judge.

The instant litigation arises out the marketing of a series of educational video tapes, known as the "Better Sex Video Series."[1] Plaintiff Judith Seifer is a registered nurse and has received a doctoral degree in human sexuality. She is a certified sex therapist with a national reputation as such and as an expert on issues of human sexuality.

In 1990, Plaintiff was approached by The Learning Corporation, a corporation which produces sex educational materials, and its President, Stephen Kapelow, with the idea of preparing and marketing a series of educational videos to be known as the Better Sex Video Series ("BSVS"). In December of 1990, Dr. Seifer entered into an agreement with the Learning Corporation, in which she would edit the screenplay and provide narration for Volumes One through Three of the BSVS. In October of 1991, she entered into a second agreement with The Learning Corporation, in which she agreed to appear in video footage to be used in or in connection with the BSVS and several related videos. Plaintiff further agreed to assist in marketing the series by appearing on television or radio talk shows and in video footage. Plaintiff alleges that she authorized only the Learning Corporation to use

---

[1]. The following facts are taken from Plaintiff's Amended Complaint (Doc. # 22). Since Defendants' Motion is brought pursuant to Rule 12(b)(6), in order to set forth the factual background of this litigation, the Court has accepted Plaintiff's allegations as true, and has construed them in the light most favorable to her.

her name and likeness in connection with marketing and promoting the BSVS.

In April of 1991, the Learning Corporation negotiated an agreement with Defendant Townsend Enterprises, Inc. ("Townsend"),[2] a corporation which is engaged in the business of the production, marketing, sales and distribution of explicit sexual videos, magazines and related merchandise, pursuant to which Townsend received an exclusive license to market and to distribute the BSVS. The agreement purported to convey to Townsend the right to use Plaintiff's name and likeness to promote the videos. Plaintiff alleges that this grant was in excess of the rights of the Learning Corporation and was unlawful. Sometime in 1991, Townsend and Defendants PHE, Inc., and Adam & Eve Communications, Inc., began marketing the videos in connection with their "adult" mail order business. Dr. Seifer's name and likeness were repeatedly employed in advertisements for the BSVS and for other products which appeared in catalogs, and in advertisements promoting explicit adult videos, magazines, and related merchandise.

In July of 1992, Plaintiff became aware of the misuse of her name and likeness and contacted the Learning Corporation. She was referred to Townsend. Plaintiff demanded that Townsend and the other Defendants cease and desist from using her name and likeness to market the BSVS alongside sexually explicit videos, magazines, and related merchandise. Thereafter, Plaintiff began discussions with representatives of Townsend regarding when and in what context her name might be used to market the BSVS. Townsend re-

peatedly indicated that it would not use her name or likeness without her express approval. Contrary to their repeated representations, Defendants have continuously marketed the BSVS together with sexually explicit materials, and have used Dr. Seifer's name and likeness to promote the series.

On February 13, 2001, Plaintiff initiated this litigation in this Court, invoking the Court's diversity jurisdiction, against PHE, Inc., Townsend Enterprises, Inc., and Adam & Eve Communications, Inc., setting forth three claims for relief, to wit: (1) a state law claim for violation of her right to privacy, based on Defendants' misappropriation of her name, reputation, and prestige without her consent, (2) a state law claim for fraud; and (3) a state law claim for breach of contract. On June 15, 2001, Defendants filed a Motion to Dismiss each of Plaintiff's claims, pursuant to Fed. R.Civ.P. 12(b)(6) (Doc. # 12). In response, Plaintiff filed an Amended Complaint (Doc. # 21), in which she sought to address the purported deficiencies in her original pleading.

Pending before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Complaint, pursuant to Rule 12(b)(6) (Doc. # 22), as well as their original Motion to Dismiss (Doc. # 12). For the reasons assigned, Defendants' Motion to Dismiss her Amended Complaint is OVERRULED in PART and SUSTAINED in PART. Because Defendants have filed a renewed motion directed to Plaintiff's amended pleading, their original motion (Doc. # 12) is OVERRULED as MOOT.

---

**2.** Plaintiff alleges that Townsend conducts business under a variety of names, including "Adam & Eve," "The Better Sex Institute," "Chapel Hill Institute," "Sinclair Intimacy Institute," "The Townsend Institute," and "the Sinclair Institute." She further alleges that Defendants PHE, Townsend, and Adam & Eve are or were at all material times under the common ownership and control of Philip D. Harvey.

## I. Standard Governing Rule 12(b)(6) Motions

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers,* 87 F.3d 176, 179 (6th Cir.)(citing *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir.1993), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 510, 136 L.Ed.2d 400 (1996); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Barrett v. Harrington,* 130 F.3d 246 (6th Cir.1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998))("In considering a motion to dismiss for failure to state a claim, the Court is required to take as true all factual allegations in the complaint."); *Lamb v. Phillip Morris, Inc.,* 915 F.2d 1024, 1025 (6th Cir.1990), *cert. denied,* 498 U.S. 1086, 111 S.Ct. 961, 112 L.Ed.2d 1048 (1991). However, the Court need not accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). A well-pleaded allegation is one that alleges specific facts and does not merely rely upon conclusory statements. The Court is to dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

## II. Defendants' Motion to Dismiss (Doc. # 22)

### A. Claim for Misappropriation of Name and Likeness (Invasion of Privacy)

In Count One of her Amended Complaint, Plaintiff asserts that Defendants have misappropriated her name and likeness by repeatedly employing them in "advertisements for the Better Sex Video Series and other products which appeared in catalogues and advertisements promoting explicit adult videos, magazines and related merchandise." (A.Compl. ¶ 15). Although Plaintiff complains of the manner in which Defendants have used her name and likeness to market the BSVS, her greatest concern appears to be that Defendants have marketed the BSVS alongside sexually explicit videos, magazines and related merchandise, while using her name and likeness to promote the BSVS, thus implying that she endorses all of the products.

In their Motion to Dismiss, Defendants assert that Plaintiff has not stated a claim for invasion of privacy, based on misappropriation of her name and likeness, to the extent that she has asserted that they misappropriated her name and likeness in connection with their promotion of the BSVS.[3] They argue that Dr. Seifer is seeking to prevent them from accurately describing her appearance in the BSVS, and that Plaintiff cannot bring a cause of action under state law for such conduct. Specifically, they contend that such use of a performer's name is not misappropriation and, to the extent that Ohio law permits a claim on that basis, it is preempted by federal copyright law.[4] Plaintiff responds

---

**3.** In a footnote, Defendants state that to the extent that plaintiff is claiming that her name and image were explicitly used to promote a product in which she does *not* appear, the allegations are overly conclusory and need not be accepted (Doc. # 22, n. 2). Plaintiff has clearly alleged that Defendants repeatedly used her name and likeness, without her consent, to promote both the BSVS and other products, and that this usage constitutes an invasion of privacy by misappropriation.

These allegations are sufficient under Fed. R.Civ.P. 8. Accordingly, the Court concludes that Plaintiff has stated a claim for invasion of privacy, based on misappropriation, due to Defendants' promotion of products other than the BSVS through the use of Dr. Seifer's name and image.

**4.** In their original Motion to Dismiss (Doc. # 12), Defendants also asserted that Plaintiff's claim is barred by the statute of limitations.

that she is not arguing that the Learning Corporation was barred from using her name and likeness in the marketing of the BSVS, nor is she asserting that Defendants may not state that she was a host of the BSVS. Rather, she characterizes her allegations as asserting that Defendants exceeded their authority by using her name and likeness to promote both the BSVS and their other products, and by implying that she personally endorsed those products.

1. *Preemption under Section 301 of the Copyright Act*

 Section 301 of the Copyright Act, 17 U.S.C. § 101, et seq., specifies that certain rights are governed exclusively by federal copyright law. It provides, in pertinent part:

(a) On or after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title....

They argued that Plaintiff's invasion of privacy claim was subject to a four-year statute of limitations, and that her Complaint revealed that any misappropriation occurred more than eight years prior to filing of her Complaint. Plaintiff's Amended Complaint contains numerous factual allegations that Defendants fraudulently induced her not to file suit earlier, by assuring her that her name and likeness would not be used without her express permission. Despite these allegations, Defendants do not raise their statute of limitations argument in their Motion to Dismiss the Amended Complaint (Doc. # 22). The Court, therefore, concludes that they did not intend to incorporate by reference their statute of limitations argument, and that argument will not be addressed.

(b) Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to—

(1) subject matter that does not come within the subject matter of copyright as specified by sections 102 and 103, including works of authorship not fixed in any tangible medium of expression;....

17 U.S.C. § 301. Under this section, two conditions must be satisfied in order for a state law claim to be preempted: (1) the content of the protected right must come within the subject matter of copyright, and (2) the nature of the rights granted by state law must be equivalent to any of the exclusive rights within the general scope of copyright. *Brown v. Ames*, 201 F.3d 654, 657 (5th Cir.2000).

For example, in *Fleet v. CBS*, 50 Cal. App.4th 1911, 58 Cal.Rptr.2d 645 (1996), several motion picture actors brought suit against CBS, Inc., which owned the exclusive distribution rights to the film on which the actors had appeared. The actors, who were disgruntled because they had not been paid for their work, sought to halt the distribution of the film. They alleged, *inter alia*, that CBS had violated Cal. Civ. Code § 3344 (West 2002) (prohibiting misappropriation of name and likeness for

In addition, Defendants state, in one sentence, that the accurate description of a performer's appearance in a film is permitted by the First Amendment to the United States Constitution. Although they cite one case for that proposition (immediately following the sentence), they have not briefed the issues of whether the BSVS falls within the First Amendment's protection, whether advertisements for the BSVS fall within protected speech, and the extent of that protection, if any. Accordingly, the issue of the First Amendment's application to Plaintiff's claim has not been adequately raised, and the Court will not address it. Defendants may reassert this argument, if they so desire, in a subsequent motion.

commercial purposes), by using for advertising and promotional purposes still photographs of the plaintiffs taken from the film. The court held that the actors' claims were preempted by the Copyright Act, reasoning that the actors had no rights to the copyrighted film, and that they sought to prevent the distribution of a copyrighted work (portions of the film itself), a right which is protected under § 106 of the Copyright Act.

In *Brown, supra,* the Fifth Circuit likewise addressed whether a misappropriation of likeness claim was preempted by § 301. Therein, Ames, a music producer, licensed master recording of various songs to Collectibles, a record label that distributes and sells music recordings. The license agreement purported to give Collectibles the right to use the names, photographs, likenesses and biographical material of all the musicians whose performances were on the master recordings. In accordance with the agreement, Collectibles manufactured and distributed cassettes and compact discs (CDS), as well as music catalogs, posters, and videotapes, using the names and likenesses of the musicians. The musicians filed suit against Collectibles for copyright infringement and for misappropriation of their names and likenesses.

Addressing whether the plaintiffs' claims were preempted by § 301, the Fifth Circuit concluded that the first element of the test was lacking. Beginning with the content of the right protected by the misappropriation tort, the Court held that it does not fall into the subject matter of copyright:

> As the district court correctly recognized, the tort for misappropriation of name or likeness protects "the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him

or to others." Restatement (Second) of Torts § 652C (1977). In other words, the tort of misappropriation of name or likeness protects a person's *persona.* A *persona* does not fall within the subject matter of copyright—it does not consist of "a 'writing' of an 'author' within the meaning of the Copyright Clause of the Constitution." Nimmer, supra, § 1.01[B][1][c]; *Jarvis v. A & M Records,* 827 F.Supp. 282, 297 (D.N.J.1993); *Bi–Rite Enterprises, Inc. v. Button Master,* 555 F.Supp. 1188, 1201 (S.D.N.Y.1983); *Apigram Publishing Co. v. Factors, Etc., Inc.,* 1980 WL 2047 (N.D.Ohio July 30, 1980)(available on WESTLAW); *Lugosi v. Universal Pictures,* 25 Cal.3d 813, 849, 160 Cal.Rptr. 323, 603 P.2d 425 (1979) (Bird, C.J., dissenting). Furthermore, contrary to appellants' implications, appellees' names and likenesses do not become copyrightable simply because they are used to identify the source of a copyrighted work. Therefore, their misappropriation claims do not fit the terms of § 301 preemption.

201 F.3d at 658. Because a person's name and likeness were not copyrightable, the Fifth Circuit concluded that § 301 preemption did not apply.

The Sixth Circuit adopted this view in *Landham v. Lewis Galoob Toys, Inc.,* 227 F.3d 619 (6th Cir.2000), in which an actor alleged that the marketing of an action figure toy, based on his character in the movie, Predator, violated his right to publicity. Therein, the Sixth Circuit stated that his claim was not preempted, because the plaintiff was "not claiming the right of publicity in order to gain rights to the telecast of his performance, or to contest Fox's right to create derivative works from its copyrighted work in general. Rather, he claims that the toy evokes his personal identity-an inchoate 'idea' which is not

amenable to copyright protection." *Id.* at 623.

This Court likewise agrees that a person's name and likeness do not become copyrightable merely because they have been placed on works which are subject to copyright law. In other words, even though Dr. Seifer has appeared on the BSVS, which comes within the subject matter of copyright, Dr. Seifer's name and likeness themselves are not rendered copyrightable. Plaintiff herein has sought to protect her right to control the use of her name and likeness, not to control her performance on the BSVS. Accordingly, the content of the protected right in Plaintiff's misappropriation claim does not come within the subject matter of copyright. Plaintiff's state law invasion of privacy claim is not preempted by § 301 of the Copyright Act.

### 2. *Implied Right to Use Performer's Name and Likeness*

■ Defendants assert that Plaintiff cannot maintain her right to privacy claim, because an authorization (*i.e.*, the exclusive license from the Learning Corporation) to distribute a work necessarily includes that right to identify accurately the author or performer's name. Section 106 of the Copyright Act provides that an owner of a copyright has the exclusive right to do and to authorize the following: (1) to reproduce the work; (2) to prepare derivative works based on the copyrighted works; (3) to distribute copies to the public by sale, transfer of ownership, rental, lease or lending; (4) with regard to audiovisual works, to perform the work publicly; and (5) for certain types of works, to display it publicly. 17 U.S.C. § 106. Defendants implicitly argue that the right to use the name and likeness of a performer in a copyrighted work falls within the scope of their rights under § 106.

In support of that argument, Defendants cite to the Fifth Circuit's decision in *Brown, supra.* Therein, the court of appeals addressed whether a misappropriation of name and likeness claim was preempted by federal copyright law, due to conflict preemption (as opposed to § 301 preemption). It noted that common law on the right to publicity ordinarily permits an authorized publisher or distributor to use name or likeness to identify truthfully the author or creator of the work. 201 F.3d at 660. The court concluded that, to extent that states allowed claims for such conduct, the claims would interfere with the uniformity of the copyright system and the exploitation of works in the public domain and, therefore, would be preempted by the Copyright Act. *See Zim v. Western Publishing Co.*, 573 F.2d 1318 (5th Cir.1978); *Gee v. CBS, Inc.*, 471 F.Supp. 600, 662 (E.D.Pa.1979). Defendants also rely upon *Zim, supra*, another Fifth Circuit decision, in which the Court held that a publisher's contract with an author allowed it to use the author's name on a book.

The Court disagrees that an individual's performance in a copyrighted work allows a distributor, as a matter of law, to use the performer's name and likeness to promote the work. In *Landham, supra*, the Sixth Circuit looked to whether the plaintiff, an actor in a film, had signed an agreement which would have permitted Twentieth Century Fox ("Fox") to assign all merchandising rights for the plaintiff's character. The Court of Appeals concluded that, because the plaintiff had not signed the agreement, it could not be enforced against him. Thus, the court addressed the merits of plaintiff's claim that his name and likeness has been misappropriated. Although the Sixth Circuit ultimately held that the plaintiff had not demonstrated that the toy company's use of his character had significant commercial value or that

the toy invoked his persona, it did *not* dismiss his claim on the ground that Fox held the copyright to the film and, therefore, could use his likeness for promotional purposes. Thus, the Sixth Circuit did not suggest that a distributor may use a performer's name and likeness to promote its copyrighted product without the performer's consent.

In addition, many of the cases cited by Defendant do not provide that a distributor or publisher may indiscriminately use the performer or creator's name or likeness. Although the court in *Zim* allowed the author's name and likeness to be used when authorized by the contract, it further concluded that where the publisher's use of the author's name on another book was *not* authorized by the contract, the company's use was tortious. 573 F.2d at 1327. The decision in *Fleet, supra,* is likewise distinguishable from the present situation. Therein, CBS was attempting to advertise the film using images from the film itself, a work for which it held the copyright. Here, Plaintiff has not sought to prevent distribution of the BSVS, nor has she complained about the use of portions of her performance in the videos for advertisement. Rather, she has complained about the use of her name and image, outside of the copyrighted work, to endorse Defendants' products.

Moreover, the fact that an individual has appeared in a copyrighted work does not authorize a distributor to use *any* likeness of that individual to promote its works. *See Brinkley v. Casablancas,* 80 A.D.2d 428, 438 N.Y.S.2d 1004 (N.Y.App.Div.1981) (although plaintiff, a model, had authorized certain uses of a photograph, she had not authorized distribution of photo at issue; thus, the distribution violated her right to publicity). In addition, an authorized distributor may not use an individual's name or likeness to create the false impression that the individual endorses a product or

company. *See Cher v. Forum Internat'l, Ltd.,* 692 F.2d 634 (9th Cir.1982) (advertisement for interview with Cher was actionable, because it implied that Cher endorsed the magazine); *National Bank of Commerce v. Shaklee Corp.,* 503 F.Supp. 533 (W.D.Tex.1980)(although Heloise authorized publication and sale of her book, the defendant tortiously included advertisements that implied that Heloise personally endorsed defendant). In other words, even assuming, *arguendo,* that the licensed distributor of a copyrighted work has an implicit right use a performer or author's name and likeness to market that work, the distributor is not given *carte blanche* with regard to the performer's name and image.

Herein, Plaintiff alleges that she did not consent to Defendants' use of her name and likeness to promote the BSVS. Moreover, she alleges that Defendants did not use her name and likeness merely to identify her as a performer on the BSVS. Rather, she alleges that Defendants wrongfully used her name, likeness, and biographical information to promote and endorse the videos. In light of these allegations, the Court cannot conclude that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Accordingly, the Court will not dismiss Plaintiff's invasion of privacy claim on the ground that Defendants have an implied right, by virtue of Plaintiff's participation the BSVS, to use her name and likeness.

3. *Common Law Tort of Right to Privacy*

 The Ohio Supreme Court recognized the tort of invasion of privacy in *Housh v. Peth,* 165 Ohio St. 35, 133 N.E.2d 340 (1956), stating:

An actionable invasion of the right of privacy is the unwarranted appropria-

tion or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

*Id.* (paragraph two of the syllabus). In subsequent decisions, the Ohio Supreme Court has adopted much of the Restatement of the Law 2d, Torts (1965), Section 652C, which sets forth four theories of invasion of privacy, to wit: (1) an unreasonable intrusion upon the other's right to seclusion, (2) misappropriation of another's name or likeness, (3) unreasonable publicity given to another's private affairs, and (4) representing an individual in a "false light."[5] *Haller v. Phillips,* 69 Ohio App.3d 574, 578, 591 N.E.2d 305 (1990); *Kester v. Rodgers,* 1994 WL 188918 (Ohio App. 11th Dist. May 6, 1994); *see Zacchini v. Scripps–Howard Broadcasting Co.,* 47 Ohio St.2d 224, 351 N.E.2d 454 (1976); *Vinci v. American Can Co.,* 9 Ohio St.3d 98, 459 N.E.2d 507 (1984) (Para. 2 of the syllabus)("One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy . . . ."); *Reeves v. Fox Television Network,* 983 F.Supp. 703, 710 (N.D.Ohio 1997). In order to state a cause of action for invasion of privacy by misappropriation, the complaint must allege that plaintiff's name or likeness has some intrinsic value, which was taken by defendant for its own benefit, "commercial or otherwise." *Powell v. Toledo Blade Co.,* 1991 WL 321960 (Ohio Com.Pl. Sept. 18, 1991); *Jackson v. Playboy Enterprises, Inc.,* 574 F.Supp. 10, 13 (S.D.Ohio 1983). Herein, Plaintiff has alleged that her name and likeness have an intrinsic value, in that

she is a nationally recognized sex therapist. She further alleges that Defendants have, without her permission, used her name and image to promote the BSVS and other products for their commercial benefit.

■ The contract between Plaintiff and the Learning Corporation does not refute her allegation that she did not consent to Defendants' use of her name and likeness. In paragraph 3 of the 1990 Agreement for Services (Compl.Ex.A), the parties agreed:

> SEIFFER [sic] has provided a resume of her professional experience which is attached hereto as *Exhibit A.* LC has relied on ther [sic] expertise in the field of sex education in entering into ther [sic] agreement. SEIFFER [sic] specifically grants LC the right to use her name, together with references to her prior experience, in marketing and promotion efforts for the products which are produced pursuant to ther [sic] agreement.

*Id.* The 1991 Agreement for Services (Compl.Ex.B) similar states:

> SEIFER has provided a Resume of her professional experience which is attached hereto as Exhibit A. LC has relief on her expertise in the field of Sex Education in entering into this agreement. SEIFER specifically grants LC the right to use her name, photographs and references to her past experience in marketing and promotion efforts for the products which are produced pursuant to this agreement. LC shall have the right to distribute promotional materials, consisting of printed or recorded materials, promotional videocassettes (or other materials), for the purposes of publicizing the sex education series (in-

---

**5.** The Court notes that the Ohio Supreme Court has not yet recognized a cause of action for false light invasion of privacy. *See M.J.*

*DiCorpo, Inc. v. Sweeney,* 69 Ohio St.3d 497, 634 N.E.2d 203 (1994).

cluding videos, books, radio shows, advice columns, or other media) contemplated here. In such capacity, SEIFER authorizes LC to use any portions of audio or video materials created by SEIFER as part of such publicity.

*Id.* There is no indication in either agreement that Dr. Seifer intended to authorize the Learning Corporation to transfer its right to use her name, image, or prior experience. The contract does not include language such as "the Learning Corporation, its successors or assigns." Accordingly, Plaintiff's contracts with Learning Corporation do not refute her allegations that Defendants' use of her name and likeness was unauthorized.[6] Accordingly, Plaintiff has stated a claim for invasion of privacy, due to misappropriation of name and likeness, based on allegations that Defendants improperly used her name and likeness to promote and to endorse the BSVS, as well as Defendants' other products. Defendants' Motion to Dismiss her invasion of privacy claim is OVERRULED.

### B. *Fraud*

In Count Two, Plaintiff alleges that Defendants knowingly and intentionally misrepresented to Dr. Seifer that they were not, and would not in the future, use her name or image to promote any products. She further alleges that such statements were made with the intention of inducing Plaintiff "to delay insisting that Defendants cease the unauthorized use of her name or delay the institution of legal proceedings to Plaintiff's detriment so that

Defendants could continue to trade upon the value of Dr. Seifer's name without compensating her therefore." (A.Compl.¶ 30). Defendants assert that these allegations, assuming them to be true, do not indicate that Plaintiff's reliance on these alleged statements was to her detriment.

■ In Ohio, common law fraud involves six elements: (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Burr v. Bd. of County Comm'rs of Stark County,* 23 Ohio St.3d 69, 491 N.E.2d 1101, 1105 (1986)(quoting *Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 462 N.E.2d 407 (1984)). Fed.R.Civ.P. 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R.Civ.P. 9(b). Sixth Circuit case law provides that a plaintiff must allege with specificity the times, places, and contents of the alleged fraud, and must identify (in multi-defendant cases) which defendant made which alleged misrepresentation. *Vild v. Visconsi,* 956 F.2d 560 (6th Cir.),

---

**6.** Defendants assert that they received the right to use Plaintiff's name and likeness under section 1(a) and paragraph 4(b)(5) of its agreement with the Learning Corporation. In particular, the agreement provides that Townsend had the "right to disseminate, reproduce, print and publish the name, likeness and biography of the performers, directors, producers, authors and writers who render service in or in connection with the produc-

tion of the [BSVS] for the sole purpose of advertising and exploiting the [BSVS]." (Compl. Ex. C § (1)(a)(1)). Although the agreement purports to give Townsend the right to use Plaintiff's name, likeness and biography, Defendants only obtained that right under the contract if the Learning Corporation was able to convey it to them. Plaintiff's contracts with the Learning Corporation suggest they did not have that right.

*cert. denied,* 506 U.S. 832, 113 S.Ct. 99, 121 L.Ed.2d 59 (1992); *Hoover v. Langston Equipment Assocs., Inc.,* 958 F.2d 742, 745 (6th Cir.1992); 5 Wright & Miller, *Federal Practice and Procedure,* § 1297 at 590; *see* Doc. # 46 at 19–21. "[T]he purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Building Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988). Where a plaintiff asserts fraudulent concealment, the plaintiff must allege, with particularity, its own due diligence to discover the fraud. *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975)("The [Supreme] Court [has] said that an injured party has a positive duty to use diligence in discovering his cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of his entire claim ... If the plaintiff has delayed beyond the limitations period, he must fully plead the facts and circumstances surrounding his belated discovery 'and the delay which has occurred must be shown to be consistent with the requisite diligence.' ")(quoting *Wood v. Carpenter,* 101 U.S. 135, 143, 25 L.Ed. 807 (1879)).

■ In her Opposition Memorandum (Doc. # 25), Plaintiff argues that she has alleged a claim for fraud, because Defendants' misrepresentations resulted in prolonging their use of her name and likeness and the resultant association between her and Defendants' products. Assuming

Plaintiff's allegations to be true, Dr. Seifer has alleged that, in reliance upon Defendants' assurances, she delayed taking any legal or other action against Defendants to prevent their further use of her name and image in the promotion of their products. In essence, Plaintiff asserts that, due to Defendants' misrepresentations, she has suffered increased *damages* due to Defendants' misappropriation of her name and likeness. In other words, if Plaintiff's claim for invasion of privacy fails, she has no independent claim for fraud. She has not alleged that she has relied on Defendants' misrepresentations in any way, other than by delaying legal action against them, nor has she alleged that suffered an injury in addition to the misappropriation of her name and likeness. She has not, for example, asserted that Defendants' assurances caused her to enter into, or not enter into, any transactions. The Court therefore concludes that Plaintiff has failed to allege that she has relied upon Defendants misrepresentations and has suffered an injury in a manner that constitutes a basis for a claim for fraud.[7] Accordingly, Defendants' Motion to Dismiss Plaintiff's state law claim for fraud (Count Two) is SUSTAINED.

## C. *Breach of Contract*

■ In Count Three, Plaintiff asserts a breach of contract claim against Defendants, alleging that she is a third-party beneficiary of the contract between them and the Learning Corporation. Ohio has recognized that certain third-party benefi-

---

[7]. The Court notes that Plaintiff's allegations with regard to her fraud claim are relevant to whether the statute of limitations should be equitably tolled, based upon Defendants' representations. As stated by the Sixth Circuit, to "successfully raise a claim of equitable tolling, a party must show either fraudulent concealment of the critical facts that would lead one to know that he can sue, or a misrepresentation of those facts—whether made in good faith or not—that was calculated to induce a plaintiff to forego the right to sue." *Jones v. General Motors Corp.,* 939 F.2d 380, 385 (6th Cir.1991). In addition, Plaintiff's allegations in support of her fraud claim are relevant to the issues of (1) the amount of compensatory damages, if any, to which she is entitled, and (2) whether she is entitled to punitive damages.

ciaries may assert rights as if they had been signatories to the contract. *See Visintine & Co. v. New York, Chicago & St. Louis R. Co.,* 169 Ohio St. 505, 160 N.E.2d 311 (1959); *Norfolk & Western Co. v. United States,* 641 F.2d 1201, 1208 (6th Cir.1980). The Ohio Supreme Court has distinguished between two kinds of beneficiaries: intended beneficiaries and incidental beneficiaries. *Id.* Adopting section 302 of the Restatement of the Law 2d, Contracts (1981), the Ohio Supreme Court has stated,

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
>> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>>
>> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

*Hill v. Sonitrol of Southwestern Ohio,* 36 Ohio St.3d 36, 521 N.E.2d 780, 784 (1988).

The Sixth Circuit has applied this standard with an "intent to benefit" test. *Norfolk & Western Co.,* 641 F.2d at 1208; *TRINOVA Corp. v. Pilkington Bros.,* 70 Ohio St.3d 271, 638 N.E.2d 572, 577 (1994). Under this analysis, in determining whether a person is an intended beneficiary, the inquiry is whether the promisee intends that a third party should benefit from the contract. *Id.* Even if a third party benefits from the contract, if the promisee has no intent to benefit a third party, then any third party beneficiary to the contract is merely an incidental beneficiary who has no enforceable rights or obligations under

the contract. *Id.; Hill,* 521 N.E.2d at 784. "There must be evidence that the promisee assumed a duty to the third party." *TRINOVA Corp.,* 638 N.E.2d at 577.

"Those cases which have construed whether a contract was made for the direct or incidental benefit of a third party have looked necessarily to the language of the contract to make this determination." *Hill,* 521 N.E.2d at 785; *Point East Condo. Owners' Ass'n, Inc. v. Cedar House Assoc. Co.,* 104 Ohio App.3d 704, 663 N.E.2d 343, 356 (1995). In *Hill, supra,* a bookstore employee sued a security system company as a third-party beneficiary to a contract between her employer and a security system when the employee and her husband were accosted outside the store and held inside by an assailant. The Ohio Supreme Court found that the contract was intended to protect only the property in the store, not people, and therefore the employee was not an intended beneficiary of the contract. *Id.*

In contrast, in *Anderson v. Olmsted Utility Equip., Inc.,* 60 Ohio St.3d 124, 573 N.E.2d 626 (1991), the Ohio Supreme Court found that city workers, who were injured when a "cherry picker" device which they were using failed, could sue as third party beneficiaries of a contract between the city and Olmsted to rebuild the device. In so finding, the court stated that the city clearly intended the workers to benefit from the contract because the purpose of rebuilding the device was the safety of linemen. *Id.* at 631–32.

Similarly, the United States District Court for the Eastern District of Michigan held that an employee was a third-party beneficiary of his employer's contract with a foreign firm when the employee was to perform the contract for his employer and he was to receive commissions under the contract. *Ripmaster v. Toyoda Gosei, Co., Ltd.,* 824 F.Supp. 116 (E.D.Mich.1993). The terms of the agreement clearly indi-

cated an intention for the employee to personally benefit from the contract.

In their Motion to Dismiss, Defendants herein assert that the Exclusive Licensing Agreement between the Learning Corporation and Townsend Enterprises explicitly provides that the parties did not intend to benefit any third-party beneficiaries. They cite to paragraph 8(b)(i) of the Agreement, which provides, in pertinent part:

> Nothing in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any parties other than the parties to it and their respective successors and assigns, nor is anything in this Agreement intended to relieve or discharge the obligation or liability of any third persons to any party to this Agreement, nor shall any provision give any third person any right to subrogation or action over against any party to this Agreement.

*Id.* Thus, they argue, the parties did not intend to confer third-party beneficiary status upon Plaintiff or anyone else.

In response, Plaintiff relies on paragraph 1(a)(1) of the Agreement to support her assertion that she is a third-party beneficiary. That paragraph provides, in pertinent part, that Townsend Enterprises is granted:

> The right to disseminate, reproduce, print and publish the name, likeness and biography of the performers, directors, producers, authors and writers who rendered service in or in connection with the production of the Masters for the sole purpose of advertising and exploiting the Masters. In no event shall such use be made so as to indicate or imply such person is endorsing a commercial product or service other than the Masters.

*Id.* Dr. Seifer asserts that this provision is intended to guard her from the misappro-

priation of her name and likeness for the endorsement of products other than the BSVS. Plaintiff further argues that her professional reputation stood to benefit from the successful distribution of the BSVS, and that the proper performance of the licensing agreement would benefit her in that manner.

In light of the language in paragraph 8(b)(i), Plaintiff's argument is unpersuasive. Paragraph 8(b)(i) of the Exclusive Licensing Agreement unambiguously provides that the parties did not intend to confer any rights or benefits upon third-parties, either expressly or by implication. In light of that provision, the Court cannot construe paragraph 1(a)(1) as providing a basis for Plaintiff to enforce the terms of the contract against Defendants. The fact that Plaintiff's professional reputation might have been enhanced by the distribution of the BSVS does not, by itself, render her an intended beneficiary of the Agreement. The Court, therefore, concludes that Plaintiff is not a third-party beneficiary of the Exclusive Licensing Agreement. Consequently, Plaintiff may not bring a cause of action for breach of that Agreement. Accordingly, Defendants' Motion to Dismiss Plaintiff's state law breach of contract claim (Count Three) is SUSTAINED.

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint is SUSTAINED IN PART AND OVERRULED IN PART. In particular, Plaintiff's claim for invasion of privacy, based on misappropriation of her name and likeness (Count One), based on both the use of her name and likeness to promote the BSVS and Defendants' other products, REMAINS. Her claims for fraud (Count Two) and for breach of contract (Count Three) are DISMISSED.