UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 98-20736

LEONARD BROWN; ET AL

Plaintiffs,

LEONARD BROWN; WALTER PRICE; PETE MAYES; JAMES NELSON; CLARENCE
PARKER; LEE J. FRAZIER, also known as Skipper Lee Frazier; JOE
HUGHES, also known as Joe "Guitar" Hughes; RAYFIELD JACKSON, also
known as Houston Guitar Slim; FREDDIE COLLINS, also known as Big
Roger Collins; ALFRED R. BETTIS; FALIETA GREEN; THOMAS DARDAR,
formerly known as Tommy Dardar, presently known as; DEBRA L.
NICKERSON; WELDON BONNER, presently known as Juke Boy Bonner;
LIZETTE COBB; ARNETT COBB; KINNEY ABAIR

Plaintiffs-Appellees,

v.

ROY C. AMES, Etc.; ET AL.

Defendants

ROY C. AMES, doing business as Clarity Music & Home Cooking
Records

Defendant-Appellant

COLLECTIBLES INC., doing business as Collectibles Records

Movant-Appellant.

Appeals from the United States District Court for the
Southern District of Texas

February 7, 2000

Before JONES and DENNIS, Circuit Judges, and PRADO[*], District Judge.

---

[*]      District Judge for the Western District of Texas, sitting by
designation.

EDITH H. JONES, Circuit Judge:

Appellants Collectibles and Ames principally appeal the district court's determination that appellees' state law claims for violation of their rights of publicity are not preempted by the Copyright Act. The misappropriation consisted of appellants' unauthorized use of appellees' names and likenesses to market appellees' musical performances on CD's and audio cassettes for which appellants also lacked copyrights. Because a person's name and likeness in themselves are not copyrightable, and because the state law tort for misappropriation does not conflict with federal copyright law, appellees' claims are not preempted. As the other issues raised on appeal lack merit, the judgment is affirmed.

## I. FACTUAL & PROCEDURAL HISTORY

Collectibles is a record label that distributes and sells music recordings, especially repackaged vintage recordings. Ames is a music producer specializing in Texas blues. Appellees are individual blues musicians, songwriters, music producers or heirs of such.

Around 1990, Ames, d/b/a Home Cooking Records, licensed to Collectibles for commercial exploitation master recordings that included performances by appellees. The written license agreements also purported to give Collectibles the right to use the names, photographs, likenesses and biographical material of all those whose performances were on the master recordings. Ames represented and

warranted to Collectibles that Ames was entitled to convey these rights. Using the master recordings, Collectibles manufactured and distributed cassettes and CD's, as well as music catalogs, with the names and sometimes the likenesses of the performers on or in them. In addition, Ames, but not Collectibles, sold posters or videotapes with the names or likenesses of the plaintiffs.

In 1994, appellees sued Ames, Collectibles and Jerry and Nina Greene, the owners of Collectibles. Before trial, the district court dismissed appellees' negligence and conversion claims as preempted by the Copyright Act, and dismissed without prejudice the copyright claims of those appellees who had not timely obtained registration certificates. Appellees' actions for copyright infringement, violations of the Lanham Act and for misappropriation of name or likeness under Texas state law proceeded to a jury trial. At the close of appellees' case, the Court granted judgment as matter of law for defendants Jerry and Nina Greene, and the jury found in favor of all defendants on the Lanham Act claims. These rulings have not been appealed.

The jury also found that the defendants had misappropriated the names and likenesses of the appellees and had infringed (in the case of Collectibles, innocently) copyrights held by some of the appellees. Finally, the jury found that Weldon Bonner had not executed a Recording Agreement with Roy Ames. The jury awarded the appellees misappropriation damages of $127,000-- $100,000 from Ames and $27,000 from Collectibles. In its final

judgment of August 3, 1998, the court held Collectibles liable for $1,800 for copyright infringement and for $27,000 for misappropriation and Ames liable for $22,500 for copyright infringement and for $100,000 for misappropriation.

Collectibles and Ames have appealed on several grounds. First, they assert that the Copyright Act preempts the misappropriation claims. Second, they assert that the district court should have enforced the allegedly notarized January 1975 Recording Agreement between Ames and Weldon Bonner, notwithstanding the jury verdict that Bonner did not sign it, and that the district court incorrectly instructed the jury on the burden of proof. Third, they claim that the district court improperly awarded a copyright to Leonard Brown for "Ain't Got Much" because his wife wrote the song and he lacked a written assignment from her. Finally, Collectibles, but not Ames, asserts that the plaintiffs did not present legally sufficient evidence to support the misappropriation damages award.

## II.  DISCUSSION

*A. Preemption*

This Court reviews a district court's conclusions of law de novo.  See <u>Pebble Beach Co. v. Tour 18 I Ltd.</u>, 155 F.3d 526, 537 (5th Cir. 1998).

The Copyright Act provides that:

> On or after January 1, 1978, all legal and equitable rights that are equivalent to any of the exclusive rights within the

4

general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. . . .

17 U.S.C. §301(a). Section 301 requires the fulfillment of two conditions. First, the content of the protected right must fall in the subject matter of copyright. Second, the nature of the rights granted under state law must be equivalent to any of the exclusive rights in the general scope of a federal copyright. See Daboub v. Gibbons, 42 F.3d 285, 289 (5th Cir. 1995); see also 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright §1.01[B] (1999).

In Texas, the tort of misappropriation provides protection from the unauthorized appropriation of one's name, image or likeness. See Moore v. Big Picture Co., 828 F.2d 270, 275 (5th Cir. 1987). It is best understood as a species of the right of publicity or of privacy. See id. To prevail, a plaintiff must prove that (1) the defendant misappropriated the plaintiff's name or likeness for the value associated with it and not in an incidental manner or for a newsworthy purpose; (2) the plaintiff can be identified from the publication; and (3) the defendant derived some advantage or benefit. See Matthews v. Wozencraft, 15 F.3d 432, 437 (5th Cir. 1994).

Appellants argue strenuously that appellees have not presented an independent action for misappropriation. Because appellees' names and/or likenesses were used to identify their

5

musical works in Collectibles' CD's, tapes and catalogs, appellants assert that the core of the misappropriation and copyright infringement claims is the same, compelling preemption under section 301 of the misappropriation claims.

Appellants' argument ignores, however, that the content of the right protected by the misappropriation tort does not fall into the subject matter of copyright, as section 301 requires. As the district court correctly recognized, the tort for misappropriation of name or likeness protects "the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or to others." Restatement (Second) of Torts §652C (1977). In other words, the tort of misappropriation of name or likeness protects a person's persona. A persona does not fall within the subject matter of copyright – it does not consist of "a 'writing' of an 'author' within the meaning of the Copyright Clause of the Constitution." Nimmer, supra, §1.01[B][1][c]; Jarvis v. A&M Records, 827 F.Supp. 282, 297 (D.N.J. 1993); Bi-Rite Enterprises, Inc. v. Button Master, 555 F.Supp. 1188, 1201 (S.D.N.Y. 1983); Apigram Publishing Co. v. Factors, Etc., Inc., 1980 WL 2047 (N.D.Ohio July 30, 1980)(available on WESTLAW); Lugosi v. Universal Pictures, 25 Cal.3d 813, 849 (1979)(Bird, C.J., dissenting). Furthermore, contrary to appellants' implications, appellees' names and likenesses do not become copyrightable simply because they are

6

used to identify the source of a copyrighted work.  Therefore, their misappropriation claims do not fit the terms of §301 preemption.

Given the fact that a name or likeness is not copyrightable, appellants' reliance on Daboub is unavailing.  In Daboub, the plaintiffs alleged that ZZ Top had both infringed their copyright in and misappropriated one of their songs, and this Court held that section 301 of the Copyright Act preempted the state law misappropriation claim.  See Daboub, 42 F.3d at 287, 290.  The crucial difference between the two cases is that in Daboub the basis of the misappropriation claim, as well as the copyright infringement claim, was the song itself, bringing it within section 301's ambit, whereas here the basis of the misappropriation claim was defendants' use of plaintiffs' names and/or likenesses.

The appellants also cite Fleet v. CBS, Inc., 58 Cal.Rptr.2d 645 (Cal. Ct. App. 1996), which, although more similar, shares the same factual difference.  In Fleet, plaintiffs were actors in a copyrighted film who alleged that the exploitation of the copyrighted work itself infringed their state right of publicity.  See id. at 647.  They complained not only about the showing of the film, but also about the use of pictures from the film for advertising.  See id. Because the individual performances in the film were copyrightable, the court held their claims preempted by federal copyright law.  See id. at 650.  Thus, Fleet, like Daboub, involved a claim of misappropriation of something -- in Fleet, dramatic performances; in Daboub, songs -- within the

7

subject matter of copyright. This case, in contrast, involves a claim of misappropriation of name and/or likeness, which is not within the subject matter of copyright.

This Court finds the Ninth Circuit's opinions in <u>Midler v. Ford Motor Co.</u>, 849 F.2d 460 (9th Cir. 1988), and <u>Waits v. Frito-Lay, Inc.</u>, 978 F.2d 1093 (9th Cir. 1992), more persuasive than the case law urged by appellants. These cases, which the district court relied upon, involved the misappropriation of the vocal styles of Bette Midler and Tom Waits. The Ninth Circuit held that because vocal style is not "fixed," it is not copyrightable, consequently, section 301 of the Copyright Act did not preempt a claim of misappropriation of the singer's vocal style. <u>See</u> <u>Waits</u>, 978 F.2d at 1100; <u>Midler</u>, 849 F.2d at 462. In <u>Daboub</u>'s language, the content of the protected right (in these cases, the singers' vocal styles) did not fall in the subject matter of copyright. <u>Midler</u> foreshadows the result in this case, reasoning that "[a] voice is as distinctive and personal as a face." 849 F.2d at 463.[2]

One arguably analogous case has held to the contrary. In <u>Baltimore Orioles v. Major League Baseball Players Ass'n</u>, 805 F.2d 663 (7th Cir. 1986), the Seventh Circuit held that the Copyright Act preempted baseball players' rights of publicity in their

---

[2] The legislative history supports this conclusion, stating: "The evolving common law rights of 'privacy,' 'publicity,' and trade secrets ... would remain unaffected as long as the causes of action contain elements, such as an invasion of personal rights or a breach of trust or confidentiality, that are different in kind from copyright infringement." H.R. Rep. 1476, 94th Cong., 2d Sess. 132 (1976), reprinted in 1976 U.S.C.C.A.N. 5659, 5748.

performances.  The court's conclusion turned on its controversial decision that performances in a baseball game were within the subject matter of copyright because the videotape of the game fixed the players' performances in tangible form.  See id. at 674-76.[3] Baltimore Orioles, however, has been heavily criticized for holding that a baseball game is a protectible work of authorship simply because the performance was recorded on videotape that was itself copyrightable.  See, e.g., Nimmer, supra, §§1.01[B][1][c] and 2.09[F]; David E. Shipley, Three Strikes and They're Out at the Old Ball Game: Preemption of Performers' Rights of Publicity under the Copyright Act of 1976, 20 Ariz. St. L.J. 369, 384-88 (1988); Shelley Ross Saxer, Baltimore Orioles, Inc. v. Major League Baseball Players Association: The Right of Publicity in Game Performances and Federal Copyright Preemption, 36 U.C.L.A. L. Rev. 861, 870 (1989).  In any event, Baltimore Orioles is distinguishable from this case because the right of publicity claimed by the baseball players was essentially a right to prevent rebroadcast of games whose broadcast rights were already owned by the clubs.  Viewed in this way, the

_____

[3]     Baltimore Orioles appears to concede that some form of the right of publicity is not preempted by the Copyright Act, e.g., where a company, without the player's consent, used his name to advertise its product or placed the player's photograph on a trading card.  805 F.2d at 676, n.24.  The court disagreed, however, with cases on which we have relied, and with their premise that a public figure's persona is not copyrightable because it cannot be fixed in a tangible medium of expression.  805 F.2d at 678 n.26.  The court states that, "Because a performance is fixed in tangible form when it is recorded, a right of publicity in a performance that has been reduced to tangible form is subject to preemption."  Id.  If the point of this remark is not inconsistent with the previous footnote, and if we take it as drawing a distinction between the appropriation of a persona and unauthorized copying of one's photograph, we do not disagree.  The point isn't relevant to the instant case.

9

case is the same as Fleet, Inc. v. CBS, supra. The case before us offers no such complication, as the appellee performers did not give permission to the appellants to market their recordings or photographs. We decline appellants' invitation to find name or likeness copyrightable simply because they are placed on CD's and tapes or in catalogs that have copyrightable subject matter recorded on them.

The fact that section 301 does not apply does not end the inquiry, however. Although section 301 preemption is not appropriate, conflict preemption might be. The Supremacy Clause dictates that a state law that obstructs the accomplishment of the full purposes and objectives of Congress is preempted. See Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

The major purpose of the Copyright Act is, as the Constitution states, "to promote the progress of Science and useful arts." U.S. Const., art. I, § 8, cl. 8. The legislative history of the Copyright Act describes several other objectives: 1) to promote national uniformity and avoid the difficulties of determining and enforcing rights under different state laws; 2) to have copyright protection last for a limited time period, so that scholars and the public can benefit from the dissemination of copyrighted materials; and 3) to improve our international dealings in copyrighted materials. See House Report at 132, reprinted in

1976 U.S.C.C.A.N. at 5745-46; see also Goldstein v. California, 412 U.S. 546, 554-56, 93 S.Ct. 2303, 2308-10, 37 L.Ed.2d 163 (1973).

Although appellants argue vigorously that not preempting appellees' misappropriation claims would undermine the copyright system, several considerations belie this claim. First, the right of publicity that the misappropriation tort protects promotes the major objective of the Copyright Act – to support and encourage artistic and scientific endeavors.[4] Second, the record here indicates that industry practice may be to transfer rights in a performer's name or likeness when the copyright is transferred.[5] If that is the case, right of publicity claims will rarely interfere with a copyright holder's use of the creator's name or likeness in connection with the copyright. Third, common law on the right of publicity appears ordinarily to permit an authorized publisher or distributor to use name or likeness to identify truthfully the author or creator of the goods.[6] See Zim v. Western Publishing Co., 573 F.2d 1318, 1327 (5th Cir. 1978)(holding that authorization to publish author's work provided implicit authorization to use author's name to identify work); Neyland v. Home Pattern Co., 65

---

[4] The Supreme Court upheld a right of publicity action in Zacchini v. Scripps-Howard Broadcasting Co., 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977). There, the Court said: "the protection [afforded by state right of publicity laws] provides an economic incentive for him to make the investment required to produce a performance of interest to the public. The same consideration underlies the patent and copyright laws." Id. at 576.

[5] In fact, Roy Ames purported to transfer these rights as well as the copyright licenses.

[6] Appellants did not make this argument in this litigation.

11

F.2d 363, 364 (2d Cir. 1933)(holding that an implied license to use the name to sell goods arises if the goods have been sold or disposed of); <u>Kamakazi Music Corp. v. Robbins Music Corp.</u>, 534 F.Supp. 69, 77 (S.D.N.Y. 1982)(holding that the right to use a composer's name or likeness accompanies the grant of the right to use the underlying compositions); <u>Brinkley v. Casablancas</u>, 80 A.D.2d 428, 438 N.Y.S.2d 1004 (S.Ct. 1981)(holding that an unauthorized distribution of a model's name or likeness was actionable); Restatement (Third) of Unfair Competition § 47; 2 J. Thomas McCarthy, <u>The Rights of Publicity or Privacy</u> §7.4 (1999).

Only if states allowed similar claims against authorized publishers or distributors of a work (whether through copyright or the public domain) would the purposes and objectives of the Copyright Act be adversely affected.[7] Such suits would interfere to some extent with the uniformity of the copyright system and the exploitation of works in the public domain. Currently, however, no state seems to have such a law, and the general rule is as described above. <u>See</u> McCarthy, <u>supra</u>, § 7.4. Thus, because the tort would currently not be sustainable against valid copyright holders, allowing the claim in this context does not impede the transfer of copyrights or the uniformity of the copyright system.

_____

[7]    Appellants did not use the common law described above as a defense to the misappropriation charges. Thus, despite the fact that such a defense would seem to be applicable to some of the misappropriation claims, we cannot decide the case on those grounds or to allow it to influence our preemption analysis.

Supreme Court precedent suggesting that courts should steer a middle ground in considering Copyright Act preemption cases supports our conclusion that appellees' misappropriation claims are not preempted. The leading Supreme Court case on preemption in the intellectual property field, <u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc.</u>, 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989), found that a state statute providing patent-like protection for ideas deemed unprotected under federal patent law was preempted, but warned that "the States remain free to promote originality and creativity in their own domains." <u>Id.</u> at 165. The Court went on to state that: "the case for federal pre-emption is particularly weak where Congress has indicated its awareness of the operation of state law in a field of federal interest, and has nonetheless decided to 'stand by both concepts and to tolerate whatever tension there [is] between them.'" <u>Id.</u> at 166-67 (citing <u>Silkwood v. Kerr-McGee Corp.</u>, 464 U.S. 238, 256, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984)). As noted in the legislative history of section 301, Congress was aware of the operation of state law on the rights of privacy and publicity, and indicated its intention that such state law causes of action remain.[8] <u>See</u> House Report at 132, reprinted in 1976 U.S.C.C.A.N. at 5748.

---

[8] Furthermore, the several cases prior to <u>Bonito Boats</u> that dealt with preemption in the intellectual property field found that state laws on trade secrets and recording piracy were not preempted by the Copyright Act. <u>See</u> <u>Kewanee Oil. Co. v. Bicron Corp.</u>, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974); <u>Goldstein v. California</u>, 412 U.S. 546, 93 S.Ct. 2303, 37 L.Ed.2d 163 (1973).

13

Since appellees' misappropriation claims neither fall within the subject matter of copyright nor conflict with the purposes and objectives of the Copyright Act, the claims were not preempted.[9]

*B.    Damages*

The jury found that Collectibles owed plaintiffs, in the aggregate, $27,000 for the misappropriation of their names and/or likenesses. Collectibles argues that the plaintiffs did not present legally sufficient evidence on the commercial damage suffered as a result of Collectibles' use of their names and/or likenesses. We disagree. An assessment of damages is not reversed unless it is clearly erroneous, and review and approval of the verdict by the trial judge, such as occurred here, makes appellate review even more deferential. See Ham Marine, Inc. v. Dresser Industries, Inc., 72 F.3d 454, 462 (5th Cir. 1995).

Under Texas law, "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts, §652C (1977); see also Benavidez v. Anheuser Busch, Inc., 873 F.2d 102, 104 (5th Cir. 1989)(recognizing §652C of the Restatement of Torts as descriptive of Texas law); Kimbrough v. Coca-Cola/USA, 521 S.W.2d 719 (Tex.Civ.App. – Eastland 1975, writ ref'd n.r.e.) (recognizing cause of action for misappropriation under Texas law).

---

[9]    As noted above, our conclusion might be different if Texas were to allow such suits against authorized publishers or distributors of a work.

"'To prove a cause of action for misappropriation, a plaintiff must show that his or her personal identity has been appropriated by the defendant for some advantage, usually of a commercial nature, to the defendant.'" Moore v. Big Picture Co., 828 F.2d 270, 275 (5th Cir. 1987) (quoting National Bank of Commerce v. Shaklee Corp., 503 F.Supp. 533, 540 (W.D.Tex.1980)). Furthermore, plaintiffs in misappropriation of name or likeness actions are not required to show that the defendant made money from the commercial use of the name or likeness. See Henley v. Dillard Dep't Stores, 46 F.Supp.2d 587, 597 (N.D.Tex. 1999).

In a misappropriation of name or likeness action, a plaintiff may recover general damages plus any proven special damages. See Shaklee, 503 F.Supp. at 545. "General damages are those which naturally, proximately, and necessarily result from the improper communications." Moore, 828 F.2d at 277. Collectibles argues that the evidence is too speculative to support the damages verdict. While it is true that recovery is not allowed for damages that are speculative or conjectural, "mathematical precision is not required to establish the extent or amount of one's damage." Moore, 828 F.2d at 649. Damages must be "ascertainable by reference to some fairly definite standard, established experience, or direct inference from known facts," but the plaintiff does not have to give an actual dollar value to his injury. Id. In fact, one treatise states: "the award of such damages [general damages in an invasion of privacy case] is within the province of the jury and should not

15

be disturbed unless there is a clear showing of excessiveness or impropriety on the part of the jury." J. Hadley Edgar, Jr. & James B. Sales, Texas Torts & Remedies §53.08[1][a] (1999).

In this case, the jury did not clearly err in its damages verdict. The damages awarded fit the Moore criteria: the jury could reasonably have based its estimate of the damages suffered by plaintiffs and even the value of appellees' names and/or likenesses on inferences from the amounts appellees were paid to perform at blues festivals.

## C. The Notarized Contract.

The jury found that Weldon Bonner did not execute a January 1, 1975 Recording Agreement with Roy Ames. Appellant Collectibles argues that the evidence was insufficient to overcome the presumption of authenticity that attaches to a notarized contract under Texas law.[10] Appellant Ames asserts that the district court erroneously instructed the jury that the burden of proof was preponderance of the evidence when it should have been clear and convincing proof.

A party must object to a jury charge before the jury begins its deliberations in order to preserve its right to appeal that jury charge, unless the error is so fundamental as to be a

---

[10] A jury verdict will be upheld unless, upon reviewing the entire record, the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable men could not arrive at a contrary verdict. See Mosley v. Excel Corp., 109 F.3d 1006, 1008-09 (5th Cir. 1997).

16

miscarriage of justice.  See Ford v. United Gas Corp., 254 F.2d 817, 818 (5th Cir. 1958); Farrar v. Cain, 756 F.2d 1148, 1150 (5th Cir. 1985).  Since Ames did not object to the jury charge on the burden of proof and the alleged error is not so fundamental as to be a miscarriage of justice, he has waived any appeal on that basis.

Collectibles, however, has not  waived its appeal as to the sufficiency of the evidence supporting the jury verdict that the notarized contract was invalid.  It objected, on the same grounds as it argues here, to the trial court's interrogatory to the jury as to whether Ames and Bonner executed said contract.

Texas law requires "clear and unmistakable proof that either the grantor did not appear before the notary or that the notary practiced some fraud or imposition upon the grantor ... to overcome the validity of a certificate of acknowledgment." Bell v. Sharif-Munir-Davidson Dev. Corp., 738 S.W.2d 326, 330 (Tex. Ct. App. 1987); see also Stout v. Oliviera, 153 S.W.2d 590 (Tex. Civ. App. 1941).

Bonner's daughter testified that the signature on the Recording Agreement was not her father's.  Several documents in evidence showed Bonner's signature and permitted the jury to draw their own conclusions as to the authenticity of the challenged signature.  The jury could reasonably have concluded from the evidence that Bonner did not appear before the notary and his signature was forged, thus overcoming the presumption of authenticity that attaches to a notarized contract.  Because this

17

inference was reasonable, we affirm the jury's verdict that the Recording Agreement between Bonner and Ames was invalid.

*D. Leonard Brown's Copyright in "Ain't Got Much"*

Appellants claim that because Leonard Brown's wife wrote the song "Ain't Got Much" and he failed to produce a written copyright assignment from her at trial, the district court erred in granting him a copyright in the song.

Appellants never raised this particular objection to Brown's copyright in "Ain't Got Much" at trial. To avoid being waived, an argument "must be raised to such a degree that the trial court may rule on it." In re Fairchild Aircraft Corp., 6 F.3d 1119, 1128 (5th Cir. 1993); see also Harris County, Tex. v. CarMax Auto Superstores, Inc., 177 F.3d 306 (5th Cir. 1999); FDIC v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1994). In its April 2, 1997 motion for judgment, Collectibles (but not Ames) challenged Brown's copyright on the grounds that his misrepresentation to the copyright office of authorship of "Ain't Got Much" invalidated his copyright application for the entire collection it appeared in. Collectibles did not, however, contend that Brown's copyright in the song was invalid because he had not produced a written copyright assignment from his wife. In fact, at no time did Collectibles or Ames raise that particular objection at trial. Consequently, the district court never ruled on it. As a result, appellants have waived the right to appeal on this ground.

18

## III. CONCLUSION

The district court was correct in holding that plaintiffs' misappropriation claims were not preempted, that sufficient evidence supported the damages verdict, and that sufficient evidence supported the jury's determination that the Recording Agreement between Weldon Bonner and Roy Ames was invalid. In addition, appellants waived their right to argue that, because Leonard Brown did not produce a written assignment from his wife, the district court erred in awarding him a copyright in "Ain't Got Much."

**AFFIRMED.**