IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-21318

Summary Calendar
_____

MICHAEL L. MILLER,

Plaintiff-Appellant,

v.

SOUTHWESTERN BELL TELEPHONE COMPANY,

Defendant-Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas
No. H-00-1869
_____

October 7, 2002

Before KING, Chief Judge, and WIENER and PARKER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Michael L. Miller appeals from the

district court's decision granting summary judgment to Defendant-

Appellee Southwestern Bell Telephone Company ("SWBT") on Miller's

---

[*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

claims for disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 (1994) ("the ADA").  For the reasons set forth below, we AFFIRM the district court's grant of summary judgment to SWBT.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff-Appellant Miller is a fifty-three year-old male who has been employed by SWBT since 1974.  Miller began his career at SWBT as a cable splicer's helper and, by 1998, had advanced within the company ranks to the position of customer service technician, or "CST."  Also by 1998, Miller had developed a condition called spondylolisthesis, which is the displacement of vertebrae, as well as arthritis in both of his knees.  In addition to these maladies, Miller suffered from a heart condition that required surgery in 1994, 1996, and 1998.

While working at SWBT, Miller received disciplinary action from his employer on several occasions.  On January 11, 1993, SWBT suspended Miller for one day, with pay, for shopping at an Academy Store during a period of time in which he should have been working.  In May 1997, SWBT gave Miller a written reprimand for failing to allot the actual amount of time he worked on his time report.

The record indicates that Miller's case of spondylolisthesis and arthritis of the knees did not impede his ability to perform in his occupational capacity at SWBT.  After undergoing heart

2

surgery, Miller returned to his CST position in September 1998. Following his return to work, Miller's physician provided Dale Dugas, Miller's immediate supervisor, a written note indicating the limitations of Miller's post-operation work schedule. According to physician's orders, Miller was permitted to work forty hours per week plus ten hours of overtime without physical restriction, but only under the condition that Miller received two consecutive days off per week. When Miller initially returned to work, Dugas scheduled Miller to work six days (excluding Sundays), but altered the schedule to allow him to work no longer than fifty hours with two consecutive days off per week. Miller concedes that SWBT fully accommodated the physician's proposed work schedule.

On November 10, 1998, SWBT fired Miller for misrepresenting his time reports because, according to SWBT, he indicated on his reports that he performed work that he never performed. SWBT eventually replaced Miller with a fifty-six year-old male. Miller maintains that he did not falsify his time report on September 21, 1998, but instead designated the time taken for travel, cleaning, and gassing his vehicle, on his time report.

On October 21, 1999, Miller filed a charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that he was discriminated against on account of his age and disability. Miller received a right to sue letter from the EEOC on April 20, 2000. Miller filed the instant action in the United States

District Court for the Southern District of Texas on June 5, 2000, alleging, inter alia, (1) that SWBT violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.(1994) ("ADEA") because age was a motivating factor and made a difference in the decision to replace Miller with a person that was younger and less-qualified; (2) that SWBT violated the ADA by discriminating against and treating Miller in a light less favorable than its non-disabled workers; (3) that SWBT retaliated against Miller because he had informed SWBT of his disability and asserted his rights under the ADA; (4) that SWBT acted intentionally or with reckless disregard to cause Miller severe emotional distress; and (5) that Miller violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (1994) ("FLSA").

In response to Miller's complaint, SWBT moved for summary judgment on August 31, 2001, arguing (1) that Miller's ADA and ADEA claims should be dismissed because he could not establish a prima facie case of discrimination; (2) that SWBT had provided a legitimate, non-discriminatory reason for dismissing Miller; and (3) that Miller could not show that SWBT's legitimate, non-discriminatory reason for his dismissal was a pretext for discrimination. SWBT also urged summary judgment on Miller's infliction of emotional distress claims, asserting that he could not provide evidence of either severe emotional distress or intentional or reckless conduct.

4

In its Memorandum and Order of October 22, 2001, the district court awarded summary judgment in favor of SWBT on all claims, finding that Miller had not demonstrated a prima facie case of discrimination or retaliation under either the ADA or the AEDA, and that he had failed to adduce evidence of extreme and outrageous conduct supporting the intentional infliction of emotional distress or FLSA claims. The district court then dismissed Miller's case with prejudice.

Miller timely appeals the district court's grant of summary judgment on his disability discrimination and retaliation claims under the ADA.[1]

## II.  STANDARD OF REVIEW

We review the district court's grant of summary judgment to SWBT de novo, applying the same standards as the district court. Rivers v. Cent. & S.W. Corp., 186 F.3d 681, 683 (5th Cir. 1999). Summary judgment is appropriate if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c). A factual dispute is genuine when a reasonable jury could return a verdict for the

---

[1] This court need not address whether plaintiff raised a genuine issue of material fact regarding his claims for discrimination under the ADEA, infliction of emotional distress, and violation of the FLSA. Miller waived review of these issues by not incorporating them into the Argument of his Brief. See, e.g., Sherrod v. Am. Airlines, 132 F.3d 1112, 1119 n.5 (5th Cir. 1998) (citing cases and FED. R. APP. P. 28).

non-moving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

The substantive law dictates which facts are material, Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), and an issue is material if its resolution could affect the outcome of the action,  Anderson, 477 U.S. at 248.  Moreover, in summary judgment proceedings, the record is considered in the light most favorable to the non-moving party.  Dupre v. Charter Behav. Health Sys. of Lafayette, Inc., 242 F.3d 610, 613 (5th Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-66 (1986).  Summary judgment is ultimately appropriate if the non-movant fails to establish facts supporting an essential element of his prima facie claim.  Mason v. United Air Lines, 274 F.3d 314, 316 (5th Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

III. MILLER'S ADA CLAIM BASED ON REGARDED DISABILITY

The ADA prohibits discrimination by private employers against any qualified individual with a disability.  See, e.g., Dupre, 242 F.3d at 613.  When claiming discrimination based on disability, a plaintiff must establish that: (1) he was disabled; (2) he was none-the-less qualified to do the job; (3) an adverse employment action was taken against him; and (4) that he was replaced by or treated less favorably than non-disabled employees.  E.g., id.  If a plaintiff can assert a prima facie

6

case for disability discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action; should the employer succeed in doing so, the burden the shifts back to the plaintiff to establish that the articulated reason was merely a pretext for discrimination. McInnis v. Alamo Cmty. Coll. Dist., 207 F.3d 276, 282 (5th Cir. 2000).

An individual qualifies as disabled under the ADA if he demonstrates: (1) he has a physical or mental impairment that substantially limited one or more of his major life activities; (2) he has a record of such impairment; or (3) he is regarded as having such an impairment. E.g., Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001); McInnis, 207 F.3d at 279-80.

When asserting a regarded disability, a plaintiff such as Miller is required to demonstrate that his employer mistakenly believed that either (1) he had a physical impairment that substantially limited one or more major life activities; or (2) he had an actual, non-limiting impairment that substantially limits one or more major life activities. Aldrup, 274 F.3d at 287 (citing Sutton v. United Air Lines, 527 U.S. 471, 489 (1999)). Under each of these scenarios, an employer must "entertain some misperception regarding the individual—either that he has a substantially limiting impairment that he does not have or the impairment is not so limiting as believed." Id.

7

On appeal, Miller insists that his employer regarded him as suffering a physical impairment that substantially limited a major life activity.[2] Hence, the key inquiry is whether SWBT mistakenly perceived that Miller had an impairment that substantially limited his major life activity of "working."[3] The Supreme Court recently reemphasized that when working is the major life activity under consideration, the statutory phrase "substantially limits" requires a plaintiff to allege that he was unable to work in a broad range or class of jobs, rather than one specific job. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, - - -, 122 S. Ct. 681, 692 (2002) (quoting Sutton, 527 U.S. at 491). Combining the relevant analytical criteria yields the following standard, which is directly applicable to the instant case: To demonstrate that SWBT regarded him as disabled, Miller must produce evidence that SWBT mistakenly believed that he had

---

[2]  Miller does not argue that SWBT had the mistaken perception that he had a substantial, non-limiting impairment.

[3]  The Supreme Court has defined major life activity as those activities that are "of central importance to daily life." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, - - -, 122 S. Ct. 681, 691 (2002). Examples of major life activities include speaking, breathing, learning, and working. E.g., Aldrup, 274 F.3d at 286. Throughout this litigation, Miller has asserted only that his major life activity of working has been implicated. Had Miller asserted another major life activity, the analysis on substantial limitation would be drastically different. Williams, 122 S. Ct. at 693. ("Sutton did not suggest that a class-based analysis should be applied to any major life activity other than working.").

8

an impairment that made him unable to work in a broad class or range of jobs, as opposed to one specific job.

In granting summary judgment to SWBT, the district court determined that Miller had not met the requirements for being regarded as having a disability. The trial court found that Miller had not offered sufficient evidence to raise any inference that SWBT believed that Miller's impairments would substantially limit him in the major life activity of working. This precluded Miller from successfully asserting his prima facie case for disability discrimination. The court also concluded that even had Miller established a prima facie case, he still would not have been able to advance a viable claim that SWBT's legitimate, non-discriminatory reason was a mere pretext for discrimination. We find it unnecessary to discuss whether SWBT's proffered reason was nondiscriminatory because it is quite clear that Miller did not fulfill his initial burden of meeting his prima facie case for disability discrimination.

Miller asserts that he can fulfill his summary judgment burden by demonstrating that SWBT did regard him as being disabled prior to his termination.[4] He offers the following

---

[4]  In his Brief, Miller asserts that he can "clearly meet at least two" of the factors, i.e., that he had a substantially limiting physical impairment (actually disabled) and that he was regarded as such, that would qualify him as disabled. However, he offers no real support for this contention. The district court recognized that Miller did not contend that he was actually disabled, but only that SWBT regarded him as disabled, and therefore did not rule on the actual disability. Further, on

9

arguments for consideration: that it was only after he returned from six-week disability leave that SWBT began the process of dismissing him; that he was substantially limited because he was restricted as to the duration he could work under the physician's orders, and his work schedule was thus cut from eighty-four hours per week to fifty; and that three weeks afer his return from disability leave, upon his request for rest and medication, he was suspended and then fired.

On the other hand, SWBT contends that the summary judgment evidence established that SWBT did not regard Miller as having an impairment that substantially limited a major life activity. SWBT also asserts that an employer should not be held liable under the ADA for "regarding" an individual with having a disability where the employer merely relies upon restrictions placed upon the employee by the employer. It argues further that Miller was allowed to work as a fully functioning CST without any restrictions beyond those prescribed by his doctor.

Viewing any factual disputes in the light most favorable to the nonmoving party, we will assume that all of Miller's

appeal, Miller states that he "may have had no impairment at all but Defendant treated him as having a substantial limiting impairment." Given this statement, it appears that Miller is not taking his claim of actual disability very seriously; but in the unlikely circumstance that he were, this argument cannot be asserted for the first time on appeal since Miller's initial argument on the issue was insufficient for the district court to rule on it. See, e.g., Brown v. Ames, 201 F.3d 654, 663 (5th Cir. 2000).

allegations are true.  However, even in the light most favorable to him, Miller's contentions fall short of raising a genuine issue of fact.  Initially, Miller fails to adduce evidence to support a claim that SWBT <u>believed</u> that he was unable to participate in a broad range of jobs.  He does not even appear to introduce evidence that SWBT believed that he was unable to participate in one specific job, as he was allowed to continue working as a CST subsequent to his return from disability leave.  Moreover, Miller's supervisor Dugas testified that it was his understanding that Miller had difficulty with his knees if he squatted for too long and his back hurt if he sat for long periods of time.  Miller does not dispute the additional testimony in which Dugas indicated that these kinds of complaints were not unusual from members on his crew, and therefore he did not perceive these physical ailments as significantly limiting.

The fact that Miller was terminated weeks after his return and that he was suspended after his request for rest and medication does not sufficiently establish that SWBT believed that he was unable to work a broad range of jobs.  While his termination may (merely in a circumstantial sense) indicate that SWBT believed that he was unable to be employed as a CST, this does not sufficiently raise a genuine issue as to whether SWBT believed that Miller was unable to work in a range of occupational positions.  See <u>Dupre</u>, 242 F.3d at 616 (denying plaintiff's regarded disability claim even though defendant fired

11

plaintiff because "an employer does not necessarily regard an employee as having a substantially limiting impairment simply because it believes the employee is incapable of performing a particular job").

Miller's assertion that he suffered a substantial limitation on his ability to work because instead of laboring for his usual eighty-four hour week, he had to work fifty, is equally problematic. When evaluating the traditional forty-hour work week, courts have determined that the inability to work overtime is not a substantial limitation on the ability to work under the ADA. E.g., Cotter v. Ajilon Servs., Inc., 287 F.3d 593, 598-99 (6th Cir. 2002) (citing cases); see also Brennan v. Nat'l Tel. Directory Corp., 850 F. Supp. 331, 343 (E.D. Pa. 1994) ("The inability to work overtime hardly makes a plaintiff handicapped."). In addition, this argument does not address the critical issue of whether Miller's supervisors regarded him as being unable to work a broad range of jobs. Indeed, the uncontroverted evidence indicates that Miller's supervisor believed that he could and would, despite his physician's directions, exceed his allotted work time.

Further, SWBT cannot be considered to have regarded Miller as being disabled simply because of its receipt of the note from Miller's physician. Significantly, Miller forgets that the standard for regarded disability hinges on the mistaken belief of impairment. "[I]f the employer's belief [about the employee's

condition] corresponds to the employee's or his physician's description of his limitations, the employer cannot be viewed as improperly regarding him as disabled." <u>Eber v. Harris County Hosp. Dist.</u>, 130 F. Supp. 2d 847, 863 (S.D. Tex. 2001). Even assuming arguendo that this evidence satisfactorily raises the issue of SWBT's belief of his impairment, Miller's introduction of the doctor's note is ultimately counterproductive to his cause because it suggests that SWBT was correct, i.e., not mistaken, to assume some sort of impairment.

Because Miller has not demonstrated that SWBT regarded his physical condition to substantially limit his ability to perform the major life activity of working during his tenure at SWBT, a reasonable jury could not find that he was qualifiedly disabled. Miller's failure to introduce facts supporting this essential element of his prima facie claim of disability discrimination indicates that the trial court acted properly in granting summary judgment to SWBT on Miller's claim of disability discrimination.

### IV.  MILLER'S CLAIMS BASED ON RETALIATION

Miller also asserts that he suffered unlawful retaliation for participating in an act protected by the ADA. On this claim, we find it important to delve into issues that are more procedural in nature than those discussed by the district court. SWBT has asserted both at the trial level and on appeal that Miller failed to exhaust his administrative remedies as to his

13

claim for retaliation. Throughout the course of this litigation, Miller, for reasons unknown to this court, has completely disregarded this line of argument. Miller's failure to articulate some modicum of rebuttal argument on this point proves injurious to his cause, as the failure to exhaust administrative remedies serves as an independent basis to affirm summary judgment. See Randel v. United States Dep't of Navy, 157 F.3d 392, 395 (5th Cir. 1998) (stating that a plaintiff asserting racial discrimination must exhaust his administrative remedies on the claim before seeking review in federal court).

The trial court did not rule on this issue, instead opting to evaluate the substantive requirements of Miller's retaliation claims, concluding eventually that he failed to raise a genuine issue of material fact on one element of his prima facie case. Since we conclude that the district court lacked jurisdiction to consider Miller's retaliation claim on the merits, we need not address the merits.

The jurisdictional problem here relates to the fact that in the charge Miller filed with the EEOC, he did not check the box corresponding with "retaliation," but did so for "age" and "disability." From a procedural standpoint, SWBT argues, Miller only properly raised allegations of intentional discrimination under the ADA and the ADEA. Citing a number of cases, SWBT asserts that because the alleged retaliation in the instant case occurred before Miller filed the initial EEOC charge, Miller

14

should have exhausted his administrative remedies on that claim prior to filing.

Given this argument, directly at issue is whether Miller's failure to fill in the appropriate box for retaliation, when he already marked the box for disability and age discrimination, compels the conclusion that he failed to exhaust his administrative remedies before filing a lawsuit under the ADA. A review of this case using the same standards as the lower court produces the same exact outcome, but on a dissimilar basis: Summary judgment is appropriate because Miller failed to exhaust his administrative remedies on his claim for retaliation.

There are several reasons why we believe this the correct outcome in this matter. First, the federal anti-discrimination statutes, most notably, Title VII have consistently required claimants to fill in the appropriate corresponding boxes when filing their claim for unlawful employment action. See, e.g., Price v. Harrah's Md. Heights Operating Co., 117 F. Supp. 2d 919, 921-22 (E.D. Mo. 2000) (granting summary judgment on failure to exhaust administrative remedies grounds for employer because plaintiff did not check the box for retaliation and did not specifically allege retaliation in the text of the charge); McCray v. DPC Indus., Inc., 942 F. Supp. 288, 294 (E.D. Tex. 1996) (informing that when asserting a claim for discrimination under Title VII, it is necessary for the appropriate box be

15

checked in the EEOC claim).[5]  By simply checking the box

corresponding to the alleged basis for unlawful employment

action, a plaintiff sufficiently exhausts his administrative

remedies prior to a Title VII lawsuit.  See, e.g., id.

Second, the same procedural requirements for Title VII have

been interpreted to apply to EEOC charges filed under the ADA as

well.  This court has also held that the ADA incorporates by

reference the administrative procedural requisites found in Title

VII, Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir.

1996), and that adherence to these prerequisites is necessary

prior to commencing an ADA action in federal court against an

employer, id.  Although this court has not addressed the issue of

whether an ADA case cab be dismissed for failure to fill in the

appropriate box, other courts encountering this issue support the

granting of summary judgment.  See, e.g., Talbot v. U.S.

Foodservice, Inc., 191 F. Supp. 2d 637, 640 (D. Md. 2002) ("Where

a litigant has neither checked the box for discrimination, nor

mentioned disability discrimination or the ADA anywhere in his

---

[5]  It is well-established that summary judgment may be
granted against a non-movant solely on the basis of failure to
exhaust administrative remedies.  E.g., Inst. for Tech. Dev. v.
Brown, 63 F.3d 445, 447 (5th Cir. 1995).  The Supreme Court has
held that a plaintiff may not bring claims in a lawsuit that were
not included in the filed EEOC charge.  Alexander v. Gardner-
Denver Co., 415 U.S. 36, 47 (1974).  This requirement serves to
enhance the administrative enforcement process by ensuring that
the EEOC can conduct a full investigation while also providing
the employer with advanced notice of the claim and an opportunity
to resolve the dispute.  See Harper v. Godfrey Co., 45 F.3d 143,
148 (7th Cir. 1995).

16

charge of discrimination, the EEOC cannot reasonably have been expected to have investigated disability discrimination."); cases cited infra. Hence, the "box filling" requirement cited by SWBT appears to arise in the ADA context as well as the Title VII context.

Third, one of our sister circuits has indicated that in the ADA context, a plaintiff's failure to fill in the appropriate box in the filed charge, coupled with the inability to describe the general nature of the claim in the narrative section of the charge, forms a sufficient basis for summary judgment. The Seventh Circuit decided that when a plaintiff fails to mark the appropriate box for "retaliation" but continues to seek relief for disability discrimination and retaliation, the plaintiff has nevertheless failed to exhaust his administrative remedies as to the retaliation claim. Cable v. Ivy Tech State College, 200 F.3d 467, 477 (7th Cir. 1999).[6] The Cable court observed that the body of the plaintiff's EEOC charge did not even "hint at retaliation, much less develop [a] factual basis for the claim." Id. Even when viewed in the light most favorable to the plaintiff, the statement of discrimination did not implicate the behavior that plaintiff asserted to be the basis of his retaliation claim. Id. The Seventh Circuit deemed the

---

[6] In his EEOC charge, Cable checked the "Other" box only, but did not write in the narrative portion of the claim that he was discriminated against on the basis of his disability.

17

plaintiff's narrative to have given insufficient indication to the EEOC or the employer that he was also seeking redress for unlawful retaliation. Id.

In affirming summary judgment on plaintiff's retaliation claim, the Cable court found that there was no indication from the EEOC charge boxes, narrative, or supplemental material that the plaintiff sought redress for the retaliation claim, or even, for the matter, that the alleged retaliation "was like or reasonably related to" his statutory rights stemming from the ADA. Id.; see also Thompson v. KN Energy, Inc., 177 F. Supp. 2d 1238, 1254-55 (D. Kan. 2001) (granting summary judgment against plaintiff for failing to exhaust administrative remedies under the ADA when marked boxes for "sex" and "disability" but not "retaliation"). The similarity between Cable and the instant case is marked, particularly with the absence of narrative or other supplemental EEOC materials indicating that Miller was seeking redress for unlawful retaliation. The information, or lack thereof,[7] included on Miller's filed EEOC charge creates a

_____

[7]    The entirety of Miller's narrative reads as follows:

I.      On or about November 10, 1998, I was discharged from the position of Customer Services Technician. Respondent is public telephone system.

II.     On or about November 10, 1998, Ernie Carey, Division Manager, Installation and Repair, informed me that I was discharged for allegedly falsifying a time report and a form called 6218, trouble ticket.

18

strong presumption in favor of a finding of failure to exhaust administrative remedies.

Further compounding the difficulty for Miller is the timing of the alleged retaliation and his filing of the complaint. Miller would be able to file a supplemental or additional charge if the retaliation claim, in the parlance of this court, "grow[s] out" of his claims for disability. Gupta v. E. Tex. State Univ., 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981). SWBT is correct to emphasize that the alleged adverse employment action prompting Miller's claim for retaliation occurred prior to the filing of his discrimination charge. Since the alleged retaliation occurred prior to his filing of the complaint, Miller was well aware of the conduct and actions that would give rise to his claim of retaliation under the ADA. Given these factual circumstances, Miller's retaliation cause of action would not fall under the Gupta exception; thus he is precluded from filing a new EEOC charge based on disability. See id.

Despite the trial court's disregard of this issue, SWBT persisted in its failure to exhaust administrative remedies argument. This court concludes that because Miller did not check

---

III.   I believe that I was discriminated against because of my age, 48, in violation of the Age Discrimination in Employment Act of 1967.

Worth noting is that there was no continuation sheet for this narrative filed, nor a supplemental document of any kind in the trial record.

19

the check the correct box on the EEOC complaint form or otherwise disclose his retaliation claim and thereby exhaust its administrative remedies, he is procedurally precluded from asserting a retaliation claim under the ADA.

## V. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.