In re ALTMAN NURSING, INC., Debtor.

Clay Capital Corporation and Avi Dan, Appellants,

v.

Gerrit M. Pronske and Gerrit M. Pronske, P.C., Appellees.

Bankruptcy No. 398–31326–HDH–7.

No. 3:03–CV–2707–P.

United States District Court, N.D. Texas, Dallas Division.

March 22, 2004.

Jeffrey R. Fine, Hughes & Luce, Dallas, TX, for Appellants.

Theodore Joseph Riney, Geary Porter & Donovan, Addison, TX, for Appellees.

Harlin D. Hale, Dallas, TX, pro se.

### MEMORANDUM OPINION
### AND ORDER

SOLIS, District Judge.

Now before the Court is Brief of Appellants Clay Capital Corporation and Avi Dan ("CCC" and "Dan"), filed January 9, 2004, Response Brief of Appellees Gerrit M. Pronske and Gerrit M. Pronske, P.C., filed February 23, 2004, and Reply Brief of Appellants, filed March 9, 2004. This is an appeal from a bankruptcy proceeding before the Honorable Judge Harlin D. Hale which arises from a fee dispute between CCC and Pronske. Appellants seek reversal of a July 18, 2003 Bankruptcy Court Order holding that Pronske's right to a claim of proceeds by CCC was valid and enforceable under Texas law, and that Pronske did not mislead the Trustee into

paying the claim. For the reasons set forth below, the Court finds that the July 18, 2003 Bankruptcy Court Order should be AFFIRMED.

## RELEVANT FACTS

The Court finds the Bankruptcy Court's fact statement to be accurate, and therefore adopts it as follows. Pronske, an attorney licensed to practice law in the State of Texas, represented CCC in the underlying bankruptcy action beginning approximately in 1997 or 1998. (R. at 316, 330.) As part of his representation, Pronske signed and filed a proof of claim ("Claim") on behalf of CCC. *Id.* at 330. As a result of his legal services to CCC, Pronske billed CCC a total of $24,358.83. *Id.* at 522. However, CCC only paid Pronske $17,500 of the fees, leaving $6,858.83 of the fees unpaid. *Id.* Despite numerous letters sent by Pronske to CCC requesting payment, the fees remained unpaid for several years. *Id.* 522–523.

As a result of CCC's failure to pay his fees, Pronske filed suit in the County Court at Law No. 5, of Dallas County, Texas ("the State Court") on February 20, 2002. *Id.* at 523. Despite the fact that CCC and Dan were aware of this lawsuit, neither appeared before the State Court, and thus, the State Court entered a Default Judgment on July 22, 2002 against CCC in favor of Pronske in the amount of $6,858.83, plus simple interest at 10% per annum until paid, plus attorneys' fees and expenses in the amount of $3,887.00, plus court costs in the amount of $613.94. *Id.* at 524.

On July 1, 2002, Debtor's Chapter 7 Bankruptcy Trustee Diane Reed filed her Final Report and Proposed Distribution which indicated she was proposing to pay $203,229.05 on CCC's claim. *Id.* On August 9, 2002, the State Court signed a Turnover Order directing turnover of the Claim to the Dallas County Constable for disposition. *Id.* After providing notice of the sale to CCC and Dan on August 21, 2002, the Dallas County Constable conducted a sale of the Claim on September 3, 2002, and Pronske purchased the Claim for $3,500. *Id.*

Pronske presented the Bill of Sale to the Trustee, who recognized the Bill of Sale and remitted the distribution from the Claim to Pronske. *Id.* at 525. After receiving the distribution from Trustee, Pronske filed his Provisional Notice of Transfer of Claim on April 25, 2003. *Id.*

Accordingly, Appellants filed a Response and Objection to Provisional Notice of Transfer of Claim Filed by Gerrit M. Pronske and Gerrit M. Pronske, P.C. ("CCC's Objection"). In its Objection, CCC claimed that 1) Pronske had unfairly and improperly taken the Claim proceeds into income despite having assured the Trustee that he would hold such funds in his client trust account; 2) Pronske failed to follow transfer of claim procedures pursuant Rule 3001 of the Federal Rules of Bankruptcy Procedure by filing Notice of Transfer after the transfer actually occurred; 3) Pronske had unreasonably attempted to take the entirety of the CCC Proof of Claim proceeds of $230,229.05; 4) as an officer of the Court, Pronske should not have misrepresented to the Trustee that he would hold the proceeds of the CCC Proof of Claim in his trust account; and 5) the transfer of the CCC Proof of Claim proceeds to Pronske individually is inequitable and should not be permitted by the Bankruptcy Court, and thus, the funds should be turned over to the Bankruptcy Court for further disposition. *Id.* at 179.

However, the Bankruptcy Court held pursuant to Rule 3001(e)(2) of the Federal Rules of Bankruptcy Procedure, Pronske's right to the Claim was valid and enforceable under Texas law, and that Pronske

did not mislead the Trustee into paying the claim.[1] *Id.* at 530.

On appeal, Appellants do not challenge the mechanical process by which Pronske obtained the default judgment, turnover order, or the sheriff's sale through the State Court. (Appellant's Br. at 9.) Instead, Appellants bring the following issues for review: 1) whether this Court has the authority to control the conduct of attorneys appearing before it; 2) whether Pronske's representation in the Bankruptcy Court is governed by the Texas Rules of Professional conduct, and whether he violated them; and 3) whether Pronske's conduct violates the conditions upon which the Bankruptcy court entrusted him with the client's asset.[2]

### Standard of Review

■ The Bankruptcy Court's conclusions of law are subject to independent, *de novo* review. *See In re Foster Mortgage Corp.*, 68 F.3d 914, 917 (5th Cir.1995); *In re Berryman Prods., Inc.*, 183 B.R. 463, 466 (N.D.Tex.1995). Although the Bankruptcy Court's findings of fact are reviewable under a clearly erroneous standard, *see* Bankruptcy Rule 8013, the legal significance accorded to such facts by the bankruptcy judge is subject to independent, *de*

novo review. *See, e.g., Commercial Credit Corp. v. Reed,* 154 B.R. 471, 475 (E.D.Tex. 1993). The Bankruptcy Court's decision to give preclusive effect to a prior court's findings and judgment is a question of law that is subject to *de novo* review. *See generally Gober v. Terra + Corporation,* 100 F.3d 1195, 1201 (5th Cir.1996); *Garner v. Lehrer,* 56 F.3d 677, 679 (5th Cir.1995).

### DISCUSSION

**I. Appellants Waived Their Right to Allege that Pronske Engaged in Unethical Conduct as an Attorney.**

■ Appellants argue that the Bankruptcy Court refused to address Pronske's unethical conduct as an attorney, which included breach of fiduciary duty and violations of several Texas Rules of Professional Conduct. (Appellants' Br. at 8–10.) However, as Appellees point out, absent from CCC's Objection or the transcript from the Bankruptcy Court's hearing is any mention of breach of fiduciary duty, ethical violations as an attorney, or the Texas Rules of Professional Conduct. (R. at 173–179, 309.) As a result, Appellees urge the Court not to consider these arguments because their failure to raise such arguments before the Bankruptcy Court

---

1. Pursuant to the *Rooker/Feldman* doctrine, the Bankruptcy Court explained that its review could not extend to the merits of the state court lawsuit or the turnover proceedings, and limited its determination to whether Pronske's claim of ownership to the Claim was, on its face, valid under Texas law. (R. at 527.)

2. However, the underlying claim in all three issues involves the ethical obligations of an attorney. As the Court explains below, Appellants are foreclosed from arguing Pronske's ethical obligations as an attorney because they failed to present this issue to the Bankruptcy Court. While Appellants clearly raised the third issue in the Bankruptcy Court's proceedings, (R. at 177–178, 361–367), Appel-

lants present it on appeal in the context of an attorney's ethical obligations. (Appellants' Br. at 14)(stating "the procedural process that Pronske followed to realize his ill-gotten windfall may have been completely legal and ethical if Pronske was a typical citizen collecting debt from another citizen, and was not subject to the ethical duties enforceable by the federal court in which he practiced. However, in this matter, Pronske was an attorney who, while acting in his capacity as [CCC's] advocate, caused the asset he had been hired to protect to be sold and turned over to him. The trustee's letter clearly indicates that the funds were issued to Pronske because they were his client's funds.")

waives their right to make such arguments before this Court. (Appellee's Br. at 13.)

■ "To avoid being waived, an argument 'must be raised to such a degree that the trial court may rule on it.'" *Brown v. Ames*, 201 F.3d 654, 663 (5th Cir.2000)(quoting *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir.1993)). In *In re Fairchild Aircraft Corp.*, "the district court concluded that [the appellant] waived any appeal to the part performance doctrine by failing properly to present this issue first to the bankruptcy court." 6 F.3d at 1128. On appeal, the appellant argued that "this doctrine was presented by implication through the cases [the appellant] cited to the bankruptcy court ..." *Id.* The Fifth Circuit rejected the appellant's argument in holding that "an argument must be pressed, and not merely intimated." *Id.* (internal quotations omitted). There, "the argument ... was not even identified by name, much less advocated." *Id.*

Appellants cite to *Kinash v. Callahan*, 129 F.3d 736, 739 n. 10 (5th Cir.1997) to support its proposition that "appeals court 'in the interest of justice' may review an issue not raised in the original proceeding." (Appellants' Reply at 8.) However, Appellants left out the crucial language included in the Fifth Circuit's footnote regarding this issue, which is stated as follows: "As a general rule, this Court does not review issues that are raised for the first time upon appeal. In exceptional circumstances, we may, in the interests of justice, review an issue that was not raised in the district court." *Kinash*, 129 F.3d at 739 n. 10.

Here, Appellants have not pointed to any exceptional circumstances indicating that the Court should consider these issues for the first time on appeal. In *Kinash*, the appellant tried to argue for the first time on appeal that his condition was equivalent to a listing that was added in the social security disability regulations five months prior to the filing of his brief in district court. *Id.* In holding that the appellant could not raise this issue for the first time on appeal, the Fifth Circuit noted that while he objected to the magistrate's finding of fact and conclusions of law recommending denial of his claim issued more than three years after this section took effect, Kinash still did not raise this issue. *Id.* As such, the Fifth Circuit held since "Kinash had ample time to bring this issue to the district court's attention, ... [w]e will not excuse his failure to do so." *Id.*

Similarly, here, Appellants had ample opportunity through briefing and during the hearing to raise the issues presented on appeal. However, they failed to do so.[3]

---

3. During the hearing, Appellants' counsel did ask Pronske, "but now what you did is you took trust funds and you commingled them with personal funds?" (R. at 373.) However, Appellants failed to follow up on this question, much less identify a cause of action relating to it. Also, during closing arguments, Appellants' counsel stated that he was "troubled" by the fact that Pronske had received a $200,000 plus claim for an unpaid legal fee bill of approximately $6,800, and that payment on this claim was received in the form of a check by Trustee made payable to Pronske's trust account. *Id.* at 377. Appellants' counsel also stated, "there's a spe-cial duty in my mind that arises when an attorney chooses to file a proof of claim on behalf of the client." *Id.* However, this statement arose in the context of a discussion involving whether Pronske had listed the appropriate address regarding notice, and Appellants' counsel once again failed to articulate a cause of action regarding Pronske's alleged unethical conduct as an attorney. *Id.* at 377–380. Finally, during closing arguments, Appellants claimed that Pronske violated the Texas Lawyer's Creed by obtaining an ex parte default knowing CCC was represented by counsel. *Id.* at 387; *see also* The Texas Lawyer's Creed: A Mandate for Profes-

In the absence of any briefing regarding exceptional circumstances, the Court simply will not consider these issues as they are raised for the first time on appeal.

Thus, it is not, as the Appellants suggest, that the Bankruptcy Court refused to address the alleged unethical conduct of Pronske as an attorney. (Appellants' Br. at 10.) Rather, Appellants failed to raise these arguments as they have before this Court, and did not give the Bankruptcy Court an opportunity to consider these arguments. Accordingly, the Court will not address these arguments for the first time on appeal.

## II. Conclusion.

Having thoroughly reviewed the appellate record, the arguments of the parties, and the relevant law, the Court is of the opinion that the July 18, 2003 Order of the Bankruptcy Court should be AFFIRMED.

**IT IS SO ORDERED.**

---

sionalism, art. III, § 11 (Nov.1989)("I will not take advantage, by causing any default or dismissal to be rendered, when I know the identity of an opposing counsel, without first inquiring about that counsel's intent to proceed.") However, Appellants briefing does not mention The Texas Lawyer's Creed or address the argument that Pronske sought

default judgment without consulting Robert Tobey, a Dallas lawyer who has, from time to time, served as counsel for CCC, and perhaps, Dan. (R. at 523–524.) As in *Brown*, here Appellants' counsel did not press these arguments, much less identify them as is done so on appeal. 201 F.3d at 663.